TIMOTHY F. LEE v. THE RALEIGH & GASTON RAILROAD COMPANY.

Where the plaintiff contracted with the defendant, a common carrier, for the transportation of a number of horses, and the horses were placed in the defendant's cars, whose agent ordered a servant to lock the cars, and the servant was prevented from doing so by the agent of the plaintiff, and on the passage some of the horses were lost: *Held*, that the defendant was guilty of no negligence in failing to lock the door, and was not liable for the loss of the horses.

This was a CIVIL ACTION to recover the value of two horses, tried at the January (Special) Term, 1874, of the Superior Court of WAKE county, before his Honor *Judge Tourgee.*

The facts, as agreed by counsel, are substantially as follows

On the 21st of February, 1872, the plaintiff entered into a contract with the defendant as a common carrier, by which the latter agreed to transport fifteen horses and two mules from Raleigh to Portsmouth, Va., over the Raleigh and Gaston Road and the Seaboard and Roanoke Road, for the price of one hundred dollars; and a receipt for one hundred dollars in the usual form, signed by the proper agent of the defendant, was exhibited by the plaintiff. In this receipt there was no stipulation for release of defendant's liability.

The horses and mules were placed on the defendant's cars at Raleigh, thirteen horses in one car, two horses and two mules in another—this division being made by order of plaintiff's agent. When the train arrived at Macon depot, during the night, it was discovered that one of the doors of the car containing the thirteen horses was open, and that two of the horses were missing; these two were never delivered by the defendant to the plaintiff.

The defendant offered to prove an express verbal contract between the plaintiff and the agent of the railroad, whereby the plaintiff agreed, in consideration of a reduction of the freight and free passes over the road to plaintiff's agent and

servant accompanying the stock, that plaintiff would assume all risk of injury to the stock while in course of transportation, and release the defendant from any responsibility therefor; and that in pursuance of such contract, such reduction of freight and free passes were given.

The defendant further offered to prove, that after the cars were loaded, the proper agent of defendant ordered one of defendant's servants to lock the door of the car in which were the thirteen horses, and that as said servant was proceeding to do so, the agent of the plaintiff told him not to do so, as some one would ride in the car with the horses. The servant thereupon closed the door, but did not fasten it. No one in fact rode in the car, although a servant of the plaintiff did ride in the car with the two horses and two mules.

His Honor held, that if defendant proved the contract as stated, such contract would reduce the responsibility of defendant from his liability as common carrier, to that of an unpaid bailee, and that the defendant would only be liable for want of ordinary care and skill. The Court further held, that a failure to properly fasten the door of the car in which were the thirteen horses, even under the circumstances proposed to be proved by the defendant, was a want of ordinary care, and that the plaintiff was entitled to recover.

The only issue submitted to the jury was the value of the horses, which was found to be $510. Judgment accordingly, and appeal by defendant.

*Batchelor, Smith & Strong* and *W. Clark,* for appellant.
*Busbee & Busbee,* contra.

PEARSON, C. J. The instruction assumes the special contract which the defendant offered to prove. We agree with his Honor in the opinion, that the legal effect of this special contract was to discharge the defendant from liability as an insurer, in its character of common carrier, and leave it responsible only for an ordinary neglect as a carrier for hire. We

suppose his Honor to mean when he was uses the words " un-
paid bailee," a carrier who is not paid as a common carrier.
Indeed, we incline to the opinion that without a special con-
tract, the law does not hold a common carrier liable as insurer,
against the accidents arising from the known habits of animals.
Common sense, as well as the law, makes a distinction
between the liability of a common carrier, in respect to live
stock and dead things; the one does not move but remains
where it is put; the other may kick and bite and lie down and
cause general disturbance, whereby some may be injured or
pushed out of the car, (as seems to have been in our case,) so
it would seem, live stock should occupy a middle ground be-
tween dead freight, merchandise and passengers, who have
instincts of self-preservation and intelligence superior to live
stock.

The case, however, does not call for a discussion of this sub-
ject. Upon the point of negligence, which is the only point
in our case, the instruction assumes the facts to be : When the
horses and mules were put on the cars at Raleigh, two horses
and two mules were put in one car, and thirteen horses in
another car, this division being made by order of plaintiff's
agent. The agent and a servant went on the train to attend
to the animals. After the thirteen horses were put in the car,
and properly cared for, the proper agent of defendant ordered
one of defendant's servants to lock the door, and as the servant
was proceeding to do so, the agent of the plaintiff told him not
do so, as some one would ride in the cars with the horses, the
servant thereupon closed the door, but did not lock it." No
one in fact rode in the car, but a servant of the plaintiff did
ride in the car, in which the two horses and the mules were
put. On this state of facts his Honor held the defendant
liable, by reason of a failure on the part of the conductor, to
have the door of the car properly fastened. We do not concur
in this legal inference. Certainly it would be negligence on
the part of a conductor, if after seeing the horses put in a
car, he should fail to see that the door was properly fastened,

in the absence of any facts by way of explanation ; but we have facts by way of explanation, to wit: the conductor ordered one of his servants to "lock the door." This was prevented by an order of the agent of the plaintiff, not to do so. "If the matter had stopped here, it might have been the duty of the conductor to have advised the agent of the plaintiff, that it was imprudent to leave the door of the car unfastened, just as it would be his duty to advise a passenger, that it was dangerous to jump off the train while in motion. Such advice would be prompted, if not by ordinary care for a passenger, at least by ordinary charity for one who was about to put himself in danger.

But the matter did not stop here, for the agent of the plain-tiff goes on to give him reasons for not having the door locked, to-wit : "Some one will ride in the car with the horses." This is in effect, saying to the conductor, "I know as well as you do, that the door ought to be fastened, but I will have a servant there to attend it. After this peremptory countermand of his orders by one having the control and management of the plaintiff's stock, the conductor was guilty of no negligence in leaving the matter in his hands, and the negligence not "contributory" but *in toto* was upon the plaintiff's agent; it was his duty to have put a servant in the car to attend to the horses ; or if he changed his mind in regard to it, to have notified the conductor, and requested him to have the door locked before the train started.

There is error.