The plaintiff alleged that the defendant agreed, in consideration of the freight paid to it by the plaintiff, to safely convey for him from Edenton to Flag Run, on the Roanoke River, certain goods of the value of $346.05; that defendant had failed to do so, and that the same were wholly lost to plaintiff.
The defendant admitted receiving the goods for shipment at Edenton on 11 October, 1884, and that they were not delivered at Flag Run, but denied the right of plaintiff to recover under the contract of shipment; that they were destroyed by fire without any negligence of the defendant.
The material parts of the bill of lading were as follows:
 EASTERN NORTH CAROLINA DISPATCH, Elizabeth City and Norfolk Railroad, Roanoke, Norfolk and Baltimore Steamboat Co., Seaboard and Raleigh Railroad. H. C. Hudgins, General Claim Agent, Norfolk, Va.
Fast Freight Line between Tarboro, Bethel, Robinsonville, Williamston, Jamesville, Plymouth, Roanoke River, Edenton and Norfolk, Baltimore, Philadelphia, New York, Boston, Providence and the East.
"EDENTON, .............., Oct. ....., 1884.
"Delivered to the steamer Plymouth, by N. S. R. R. Co., the property mentioned and consigned as below in apparent good order, to be forwarded to ........., and there delivered to consignee or connecting line, to be forwarded to destination. *Page 92 
(78) "It is mutually agreed that the carrier shall have liberty to transfer the goods to and transport them by steamers, lighters and barges, with liberty to two and assist vessels in any situation, and sail without pilot.
"No carrier shall be liable for any loss or damage arising from any of the following causes, viz.: fire from any cause on land or water, jettison, ice, freshets, weather, robbers, collisions, riots, explosions, accidents to boilers or machinery, any accident on or perils of the seas or other waters, or of steam or inland navigation, quarantine, deviation, detention or accidental delay, insufficiency of package in strength or otherwise, rust, dampness, loss in weight, leakage, breaking, sweat, blowing, evaporation, vermin, frost, heat, smell, contact with other goods, natural decay or exposure to the weather, or for loss or damage of any kind on goods whose nature requires them to be carried on deck or on open car, or for any deficiency in the contents of packages if receipted for as in good order."
Noah Burfoot, a witness for the defendant, testified: "I was clerk on the steamer Plymouth, a steamer belonging to the defendant company, in October, 1884, running between Edenton and Williamston. The goods for plaintiff were received on steamer Plymouth at Edenton, on 11 October, 1884, and were carried on that day to Williamston and placed in the warehouse of the company. Flag Run was beyond Williamston and Palmyra; freight was carried above Williamston by small steamers, the Bettie and others. I had no official connection with steamers above Williamston; the goods were not carried up the river from Williamston the day they got there, because the Bettie was not there; the water was very low. I had not been above Williamston, but judging from the water at Williamston, I don't think large draft steamers could go to Flag Run. I think the Bettie made two or three trips — some before, some after the goods were put in the (79) warehouse that was burned. The warehouse at Williamston was burned."
Upon cross-examination he said: "Edenton and Williamston were the termini of my route; the company had other boats running to Flag Run; I was never at Flag Run; don't know the depth of water above Williamston; our boat, the Plymouth, drew six feet of water; the largest boat of the company drew seven feet and six inches; the Bettie was light draft; drew two or two and one-half feet; don't know, of my own knowledge, the Bettie could not go up at the time we took the goods; don't know date the warehouse was burned; the Bettie made trips before and after the goods were carried to Williamston; Bettie was running when we took the goods; water was very low when we shipped the goods." *Page 93 
Upon the redirect examination, defendant's counsel proposed to ask witness: "What amount of goods were in the warehouse at Williamston between 11 and 19 of October, 1884?" this for the purpose of showing that there was such an accumulation of freight at Williamston that the Bettie could not carry them to Flag Run between those dates.
Plaintiff objected. Objection sustained, and exceptions.
Biggs, a witness for defendant, testified: "The warehouse at Williamston was burned 19 October, 1884. I was president of the defendant company at the time. The company owned the steamer Plymouth, making daily trips from Edenton to Williamston; also owned steamers Connahoe and Meteor, making weekly trips from Baltimore to Bull Hill, when water would admit; freights brought to Williamston by the Plymouth were carried above there by the Connahoe and Meteor; freight was put in the warehouse at Williamston until another steamer came on; was then put on steamer and sent on. Some time in August, 1884, freights brought by steamers Plymouth, Connahoe and Meteor were put in the warehouse at Williamston. The company chartered the Bettie, and she carried freight as rapidly as she could above Williamston in August, September, and October. The Connahoe (80) and Meteor could not get above Coke's Landing in September or October. A man familiar with the water at Williamston could tell, from its condition there, what its condition was above there. Connahoe and Meteor could not, at that time, go as high as Flag Run. The Bettie was a small boat, and made a trip up 4 October, 1884. The record of the steamer Bettie was kept by the captain of the steamer. I have the book in my hand. The record of her trips is in the handwriting of the clerk of the boat; I know his handwriting."
Defendant proposed for the witness to read before the jury, from this book, the entry of the trips of the steamer Bettie.
Plaintiff's counsel objected, upon the ground it was not a record but a declaration of the defendant in its own favor, and incompetent.
Objection sustained, and defendant excepted.
His Honor, in his charge to the jury, seems to have properly assumed that, by force of the contract contained in the bill of lading, the defendant company was discharged from liability as an insurer, and became responsible only for ordinary neglect, in case the goods received should be destroyed by fire on land or water before delivered at Flag Run. Lee v. R.r., 72 N.C. 236. It necessarily follows, therefore, that any testimony tending to show *Page 94 
that the company was not negligent in handling or taking care of the plaintiff's goods while in transitu was material and competent, and should have been admitted if offered.
The plaintiff and defendant contracted with knowledge of the (81) difficulties and delays attending navigation between Williamston and Flag Run when the water was low and only boats of light draft could pass upon the river. If the defendant company exercised ordinary care in protecting the goods while in its warehouse at Williamston awaiting reshipment, and in transporting them as promptly as, under existing circumstances, it could, by reasonable diligence, remove them in the smaller boats, the stipulations in the contract would operate to relieve the defendant from responsibility. It was material, therefore, that the jury should know whether, while the water was low, so large an amount of freight had accumulated in the warehouse at Williamston that the defendant company could not, by ordinary care, have removed it with the facilities at its command. We think that his Honor erred in refusing to allow the witness to testify as to the accumulation of goods in said warehouse "between 11 and 19 October, 1884." If the company carelessly allowed the plaintiff's goods to remain, when its boat could have carried the articles to their destination before the fire occurred, the defendant would be answerable in damages on account of the negligence, notwithstanding the special contract set forth in the bill of lading.
Error.
(82)