# Burnwell Coal Company *v.* Setzer.

*Injury to Servant.*

(Decided December 17, 1914. 67 South. 604.)

1. *Master and Servant; Death of Servant; Complaint.*—Where complaint alleged that deceased was employed by defendant company as a laborer in its mine, that the company failed in its duty negligently to provide a reasonably safe place in which to work, and that as a proximate result thereof, deceased met his death, it states a cause of action under sections 2485-6, Code 1907.

[Burnwell Coal Company v. Setzer.]

2. *Death; Action; Damages.*—In an action for wrongful death brought under the homicide statute, the damages recoverable are punitive and not compensatory.

3. *Master and Servant; Injury to Servant; Duty of Care.*—The failure of the master to equip coal cars with safety appliances to prevent them from running back down the slope upon miners, when such cars got loose, constituted a defect in the ways, works, etc., within the meaning of section 3910, Code 1907.

4. *Same; Statute; Applicability.*—Acts 1911, p. 500, is without application to the rights of the parties where the act was passed after the accident complained of.

5. *Same; Contributory Negligence.*—While the fact that the servant continued in the employment after knowledge of the defect cannot be shown as assumption of risk or contributory negligence under section 3910, Code 1907, yet the fact that the servant knowing of the danger of coal cars breaking loose on a slope, went upon the slope, without precaution may be shown as contributory negligence.

6. *Same.*—The fact that the mine slope was the only way of egress from the mine did not warrant a miner in going upon the slope without taking precautions to avoid runaway coal cars, where it did not appear that the cars were being constantly drawn up the slope without safety appliances, so as to prevent egress within a reasonable time.

7. *Appeal and Error; Review; Matters Presented.*—Where the appeal is by the defendant, the propriety of the action of the court in overruling demurrers to the pleas will not be considered because favorable to the party appealing.

8. *Evidence; Opinion; Experts.*—The determination of the qualification of a witness as an expert is a preliminary matter addressed to the sound discretion of the court.

9. *Same; Hypothetical Question.*—While a hypothetical question propounded to an expert witness is objectionable, if it contains elements of fact not shown by the evidence, it is not rendered objectionable because it omits to hypothesize every fact.

10. *Same.*—The frame and substance of hypothetical questions to experts is a matter resting largely in the trial court's discretion.

11. *Same.*—An expert may give his opinion as to the safety of a place or of an appliance.

12. *Master and Servant; Injury to Servant; Evidence.*—Evidence of repairs made after an accident in which a servant was injured is not admissible.

13. *Same.*—In the absence of a statute authorizing mine inspectors to make recommendations to mine operators, or enforce remedies, evidence that the mine inspector made certain suggestions to the mine operator, is not admissible in an action for the death of a miner.

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

[Burnwell Coal Company v. Setzer.]

Action by Russ Setzer, as administrator, against the Burnwell Coal Company, for damages for the death of his intestate. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Count 1 alleges that Roy Setzer, the deceased, was employed by the defendant company as a trapper or laborer in the mines of said company, and that it was the duty of the company to provide and maintain a reasonably safe place for said Setzer to work, and that the defendant company unmindful of its said duty, negligently failed to provide a reasonably safe place for deceased to work, and as a proximate consequence thereof deceased was run over, upon or against by a car or cars in said coal mine, then and there killed as a proximate consequence of the negligence of the defendant in negligently failing to provide and maintain a reasonably safe place for defendant to work. The averments of the other counts sufficiently appear from the opinion.

The following are the pleas referred to: (2) Proximate contributory negligence in that deceased knew that a loaded car was likely or liable to break loose on the slope and injure him, but nevertheless he negligently attempted to walk up said slope without ascertaining whether or not a trip of loaded cars was being pulled to the tipple from said slope, when as a matter of fact there was a trip of loaded cars being so pulled from said slope, which became uncontrolled and ran back down the slope and struck intestate, whereby he was proximately killed.

(4) Plaintiff's intestate was aware that the cars in said mine were not equipped with safety drags or attaches, and that the track in said mine was so laid and constructed that loose or uncontrolled cars thereon were likely or liable to jump therefrom and injure him

while attempting to walk along or be in the slope at the place where he was killed, and with the knowledge and appreciation of the danger arising therefrom, and thereafter plaintiff's intestate voluntarily remained in the service or employment of defendant an unreasonable time, and voluntarily went to a place in said slope or manway where loose and uncontrollable cars were likely or liable to jump from the track and injure him.

(5) Proximate contributory negligence, in that said intestate, with knowledge that loose or uncontrolled cars were likely or liable to run down the slope from the direction of the tipple and injure or kill him at the point where he was hurt, nevertheless negligently went to or dangerously near the said point or place in said mine whereby loose or uncontrolled cars did run down to said place, and so injure intestate that he died.

(6) Intestate was guilty of negligence which proximately contributed to his death in that he was warned by the superintendent, a very short time before he was killed, not to go into the place where he was killed, as it was dangerous to do so on account of the danger of loose cars, but that intestate negligently disregarded said warning, and negligently went into the slope, and was thereby killed.

The following were the replications: (1) Joinder of issue as to plea 1.

(2) It was not the duty of intestate to remedy the defect complained of in either count in the complaint.

(3) To plea 4 he interposes replications 1 and 2.

(4) To plea 5, plaintiff replies replications 1 and 2.

(5) For replication to each of defendant's pleas 2, 4, 5, and 6, plaintiff says there was no other means or way of egress from said mine except said slope, and that at the time he was killed, he was going out of said mine from his place of employment in said mine.

Demurrers 6 and 7 to replication 5 were as follows: (6) It does not appear that it was necessary or imperative for intestate to go out of the slope at the time of his death.

(7) It does not appear that intestate could not have waited until the slope became a safe way of egress.

BANKHEAD & BANKHEAD, for appellant.

ALLEN & BELL, and RAY & COONER, for appellee.

MCCLELLAN, J.—Plaintiff's intestate, a boy about 15 years of age, was killed on March 21, 1911, while in the employ and service of the defendant (appellant) in its operation of a coal mine. The cause of his death was a trip of coal cars, which, while being hauled up the slope, got loose and ran back down the slope upon him. The counts passing to the jury were those numbered 1, 11, and 15, and one lettered A. The first count ascribed intestate's wrongful death to negligence in respect of the safety of the place in which he worked. The eleventh count was framed under the first subdivision of the Liability Act (Code, § 3910), and charged that the defect in the condition of the ways, etc., consisted in the negligent failure to provide or maintain a dead latch or derailing switch to derail cars when becoming loose on the incline in the mine. The fifteenth count was framed under the first subdivision of that statute, and alleged the defect to have consisted in the absence of a drag, attached to a car or cars, which while ascending a slope in said mine became detached and ran back down the slope, causing intestate's death. Count A was framed under the second subdivision of the statute, ascribed the negligence to Superintendent Wooten, and described his dereliction to have been that he allowed the work of the defendant, therein described,

to be performed in a manner dangerous to the safety of plaintiff's intestate.

(1, 2) Count 1 sufficiently states a 'cause of action under the Homicide Act (Code, §§ 2485, 2486), as for wrongful death resulting from the breach of a common-law duty. The recovery under this count (1) could only be punitive in character. So much of the argument, suggested by the idea that only compensatory damages were awardable, predicated of excessiveness in the verdict, originally or as remitted by the plaintiff, thus becomes inapt.—See *Choate v. A. G. S. R. R. Co,.* 170 Ala. 590, 54 South. 507; *Sou. Ry. Co. v. Cooper,* 172 Ala. 505, 512, 513, 55 South. 211.

(3, 4) Counts 11 and 15 are not subject to the argued criticism that the omission to aver a duty to afford the preservative instrumentalities described in the counts numbered these defective. They each declare upon a breach of the duty, under the statute, in respect of the defect in the condition of the ways, works, etc. The allegation of each is of a described defect in that condition. It cannot be said as a matter of law that the absence of the defined safety appliances was *not* a defect in condition of the ways, etc. The counts were sufficient, and the issues they made in that regard were of fact. The act, approved April 18, 1911 (Acts, 1911, pp. 500-538), effecting the regulation of coal mining, had not become a law at the time of the injury to plaintiff's intestate. So the provisions of section 63½ (page 522) are without bearing on the rights or issues here involved.

Count A was not subject to the demurrer.

The report of the appeal will contain a statement, in substance, of pleas 2, 4, 5, and 6. According to the recitals of the minute entry, demurrers to these pleas were overruled, a ruling in favor, of course, of the de-

fendant appellant. To these pleas, plaintiff replied by replications 1 to 5, inclusive. Replication 1 was a joinder in issue on plea 1, which plea was the general issue. By reference, replications 1 and 2 were interposed to pleas 4 and 5, thus joining issue on pleas 4 and 5, as well as replying specially with the matter averred in replication 2, which was that it was not the duty of intestate to remedy the defect complained of in any count in the complaint. Replication 5 asserted, in avoidance of pleas 2, 4, 5, and 6, that the only means of egress afforded for him to leave the mine in which he was employed was the slopeway, in which he was killed when leaving the place of his employment. Demurrer to special replication 2 was overruled.

(5) The only theory upon which this action could be rested is that assumption of risk or contributory negligence cannot avail as a defense to an action laid in the breach of duty described in subdivision 1 of the Liability Act (section 3910). Such is not the case. The statute noted was changed in the Code of 1907, by the addition of the italicized expressions in the quotations to follows: "Section 3910. * * * The master or employer is not liable under this section, if the servant or employee knew of the defect or negligence causing the injury, and failed in a reasonable time to give information thereof to the master or employer, or to some person superior to himself engaged in the service or employment of the master or employer, unless the master or employer, or such superior, already knew of such defect *therein mentioned arose from, or had not been discovered or remedied owing to the negligence of the master or employer, or of some person in the service of the master or employer, and intrusted by him with the duty of seeing that the ways, works, machinery, or plant were in proper condition; provided, that in no*

[Burnwell Coal Company v. Setzer.]

*event shall it be contributory negligence or an assumption of the risk on the part of a servant to remain in the employment of the master or employer after knowledge of the defect or negligence causing the injury, unless he be a servant whose duty it is to remedy the defect or who committed the negligent act causing the injury complained of."*

The only effect of the addition (italicized) to the statute was to remove as a basis of *assumption of risk* and of *contributory negligence* on the part of an employee, in respect of a defective condition within the purview of the first subdivision of the Liability Act (section 3910), the remaining in service after knowledge by the employee, injured in consequence of the defect in condition to which the complaint or a count thereof attributed the injury for proximate cause, of the defect in condition of the ways, works, machinery, or plant of the master, except in cases where the employee injured was under the duty to remedy the defect causing his injury, or where the employee injured committed the negligent act causing the injury complained of. There is no *general* legislative purpose expressed, or necessarily impliable, to deny the existence or the defensive effect of contributory negligence or assumption of risk in all cases.

Here replication 2 asserted in assumed avoidance of the defense interposed by plea 2, which was a plea of contributory negligence, the mere fact that no duty rested on the intestate to remedy the defects in conditions described in the complaint. It does not appear from the plea that any such duty was imposed on intestate under his contract of employment. The plea avers that intestate, with knowledge that a loaded car was likely or liable to break loose on the slope and injure the intestate, nevertheless negligently, without as-

certaining whether loaded cars were being drawn up the slope, took the thus known dangerous course, and loaded cars then being pulled up the slope became loose and ran back down the slope, injuring him. If the plea had undertaken to exonerate the defendant (master) because of intestate's *remaining in the service* after knowledge of the defective condition counted on, then the replication (2) would have been apt and effective to avoid the defense so asserted. There was error, therefore, in overruling the demurrer to replication 2. Like considerations lead to the conclusion that replications 3 and 4 were similarly faulty in so far as these replications adopt, in reference, replication 2 to pleas 4 and 5.

(6) Replication 5 was subject to the sixth and seventh grounds of the demurrer. It does not aver such a case of necessity or imperativeness at the time intestate, as alleged in the pleas 2, 4, 5, or 6, undertook to go up the slope as would or did excuse his entry into a known hazardous place or situation. Certainly, under the circumstances set forth in the pleas, intestate could not justify, or avoid the effect of, his action by the mere fact that the way he went was the only way he could go. It is not made to appear by the replication (5) that the known hazardous situation made by the handling of loaded cars up the slope without the presence of the safety appliances described in the complaint, was or would be so constant or so long existent as not to have allowed intestate the opportunity of egress within a reasonable time.

(7) The appeal being by the defendant and the demurrers to pleas 2, 3, 4, and 6 having been overruled, this court has not, as indeed it could not, consider the sufficiency of the pleas indicated.

(8) It is settled with us that the determination of the qualification vel non of a person to form and give an expert opinion on a definite subject is a preliminary matter; that its decision is addressed to the sound discretion of the trial court under the evidence bearing upon that preliminary inquiry.—*White v. State,* 133 Ala. 122, 32 South. 139; *L. & N. R. R. Co. v. Sandlin,* 125 Ala. 585, 28 South. 40; *Ins. Co. v. Stephens,* 51 Ala. 123; *Ala. C. & I. Co. v. Heald,* 168 Ala. 626, 643, 644, 53 South. 162; *L. & N. R. R. Co. v. Elliott,* 166 Ala. 419, 51 South. 976; Jones on Evi., § 369.

(9, 10) Under the rule long prevailing here, the finding of the court upon the facts presented on that inquiry will not be held for error, unless the ruling is plainly erroneous. While an hypothetical question, propounded to an expert, is objectionable if it contains elements of fact not shown in the evidence, yet such a question to an expert witness is not objectionable because it omits to hypothesize every fact in evidence. An examiner of an expert witness may lay as the basis for the opinion invited only those facts in evidence which conform to the theory he would establish. Of course such questions must also incorporate sufficient of the facts in evidence to fairly justify the formation of an opinion on a material issue in the case. The frame and substance of hypothetical questions to expert witnesses is a matter largely committed to the sound discretion of the trial court.—*B. R. & E. Co. v. Butler,* 135 Ala. 388, 395, 33 South. 33; *Morrissett v. Wood,* 123 Ala. 394, 26 South. 207, 82 Am. St. Rep. 126; *Parrish's Case,* 139 Ala. 16, 43, 36 South. 1012; *Long Distance T. Co. v. Schmidt,* 157 Ala. 391, 47 South. 731; *B. R. L. & P. Co. v. Saxon,* 179 Ala. 136, 59 South. 591; Jones on Evi., §§ 370-371; 17 Cyc. pp. 244, 250. On the retrial, likely to follow the remandment to which the errors

stated must lead, these general rules will be of service in field of their application as indicated by the examination of expert witnesses on the trial now being reversed.

(11) An expert witness, qualified to that end, may give his opinion as to the safety or danger of a place, or an appliance, when that issue is involved on the trial.—*McNamara v. Logan*, 100 Ala. 187, 196, 197, 14 South. 175; *Stewart v. S. S. S. & I. Co.*, 170 Ala. 544, 54 South. 48, Ann. Cas. 1912D, 815.

(12) The court was in error in admitting, over objection, evidence of the installation of "drags" subsequent to the injury complained of. The true rule, with the conclusive reasoning supporting it, is thus stated in Jones on Evi., § 288: "In actions based on negligence the attempt is often made to draw an inference of prior negligence from the fact that, since the act complained of, the defendant has repaired the alleged defect or adopted some new precaution. A few exceptional cases under peculiar circumstances admit such evidence, but the great weight of authority holds such evidence incompetent. In some instances evidence of this character has been rejected on the ground that persons making the change were not shown to have authority to make admissions for or charge the defendant by such acts. But evidence of this character is clearly open to a much more serious objection, as was well stated in Minnesota case: 'Such acts afford no legitimate basis for construing such an act as an admission of previous neglect of duty. A person may have exercised all the care which the law required and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives

of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence.' In the Court of Exchequer Baron Bramwell thus expressed the same view: 'People do not furnish evidence against themselves simply by adopting a new plan in order to prevent the recurrence of an accident. I think that a proposition to the contrary would be barbarous. It would be, as I have often had occasion to tell juries, to hold that, because the world gets wiser as it grows older, therefore it was foolish before.' But evidence of this character may be competent for the purpose of showing that the place of accident was *under the control of the defendant,* if this becomes an issue, or that the place or machinery complained of *is not at the time of the trial in the same condition as at* the time of the accident."—*N. C. & St. L. v. Ragan,* 167 Ala. 277, 52 South. 522.

(13) Unless there was in June or July, 1910, some statute authorizing the chief mine inspector or his assistants to make recommendations to mine operators, or to enforce remedies, with reference to the safety of their plants in respect of appliances to avert injury from cars getting beyond control in the slope and running down to the endangering of persons below, we do not see how the report of Associate Inspector Neill and the letter of his chief could be admissible, even though the subject-matter of each was communicated or delivered to the mining company. We have not been able to find any such statute in effect in 1910. If there was, in fact, no such positive law, then the matter of this report and the letter of July 2, 1910, was, at most, just

as if two expert miners had communicated to the company *their* idea of the hazard of operating such a mine without a "dead switch" on the entry (slope) track. Certainly that character of matter would be inadmissible to charge the operator with negligence or make aggravated wrong. The operator is not an insurer of the absolute safety of the plant, appliances, ways, etc. Individuals, though experts, have no power or authority to define what is the exaction of duty, or to point out actions or precautions which, if taken or observed, would be the performance of duty. If such individual, though expert, judgment, so communicated to the operator, was admissible as evidence, then the operator would, of necessity, be entitled to show that other individual experts advised him that no such acts or precautions were necessary or desirable in the premises, and so an issue would be injected that would cloud and confuse the trial on the real issue, whether the operator had, *in fact,* breached his duty to the proximately thereby caused injury to the party complaining.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.