(81 South. 630)

BIRMINGHAM FUEL CO. v. TAYLOR.
(6 Div. 708.)

(Supreme Court of Alabama. Jan. 16, 1919.
On Rehearing, April 17, 1919.)

1. TRIAL ⬥194(19)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In action by driver in mine, injured by being caught between an upright supporting timber and a car, an instruction that the question as to negligence would be whether or not the timber was in fact "too near the rail" held erroneous, as withdrawing issue from jury.

2. MASTER AND SERVANT ⬥293(7)—INJURIES TO SERVANT—SAFE PLACES TO WORK—INSTRUCTIONS.

In action by driver in mine injured by being caught between a car and an upright supporting timber, a request to instruct that unless the timber was negligently placed in a way that was "ordinarily dangerous," and unless plaintiff was not injured by some other proximate cause, the verdict should be for defendant, held properly refused as misleading.

3. TRIAL ⬥252(1) — INSTRUCTIONS — EVIDENCE.

Requested instructions, hypothesizing facts which there was no evidence tending to show, were properly refused.

4. TRIAL ⬥260(1) — REQUESTED INSTRUCTIONS.

Where the theory of the case was sufficiently presented by given instructions, there was no error in refusing requested instructions.

5. MASTER AND SERVANT ⬥118(1)—INJURIES TO SERVANT—SAFE PLACES OF WORK—NEGLIGENCE.

The mere fact that no employé had ever before, throughout many years of operation, been injured by contact with a post in defendant's mine near a tram track does not, as a matter of law, disprove negligence in its maintenance.

6. TRIAL ⬥337—INSTRUCTIONS—VERDICT.

In action by driver in a mine, injured by being caught between a car and an upright supporting timber, a verdict for plaintiff held not contrary to an instruction that, if the evidence shows that "the manner in which the track and props * * * were placed and constructed had uniformly proved adequate and safe prior to the injury, it was not negligence for the defendant to have continued to use the same in the manner in which they were placed to the time of the alleged injury," although the undisputed evidence was that no accident had occurred "at this particular point" during an operation of six or seven years.

7. MASTER AND SERVANT ⬥285(10)—INJURIES TO SERVANT—PROXIMATE CAUSE—QUESTION FOR JURY.

In action by mine employé, injured while uncoupling cars by the driver suddenly starting the cars, thus throwing plaintiff against an upright supporting timber, near the track, whether the sudden starting of the car was the sole, independent, and efficient cause of the injury held for the jury.

8. MASTER AND SERVANT ⬥246(2) — INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—SUDDEN HAZARDS.

The mere fact that a servant saw another way of acting when suddenly called upon to extricate himself from a dangerous position, though it would have conserved his safety, does not, per se, render him guilty of contributory negligence in resorting to the mode of escape he actually adopted.

9. DAMAGES ⬥173(1)—PERSONAL INJURIES—DECREASE OF EARNING POWER—PROOF.

It was proper for injured person to testify to the rate of his earnings at the time of his injury, to be considered by the jury upon the question of compensation for permanent decrease of earning power.

10. EVIDENCE ⬥513(11) — EXPERT TESTIMONY—MINES—SAFETY.

In action by driver in mine, injured by being caught between car and upright supporting timber, witnesses who qualified as experts were properly allowed to state their opinion that a place for work, constructed like the one in the case, was not a proper place to work; that the timber was too near the track for safety of workmen.

11. MASTER AND SERVANT ⬥270(15)—CUSTOM—ADMISSIBILITY.

The fact that drivers in defendant's mine were accustomed to calling to a man uncoupling their cars, "How about it?" might be admissible to fix a duty, but not to show that it was or was not done in a particular instance.

12. MASTER AND SERVANT ⬥267(1) — INJURIES TO SERVANT—NEGLIGENCE—EVIDENCE.

In action by driver in mine, injured by being caught between a car and an upright supporting timber, the fact that the state mine inspector had inspected the mine, and raised no objec-

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tion to the timber in question, is not admissible to show that the construction was proper, in the absence of a statute authorizing him to prescribe or approve the construction and proof that he had done so.

### On Rehearing.

13. TRIAL ⊜⟿295 (1) — INSTRUCTIONS — CONSTRUCTION AS A WHOLE.

A judgment will not be reversed by reason of an instruction prima. facie erroneous, where the issue to which it referred was fairly submitted to the jury by the charge as a whole.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Action by Clarence Taylor, by next friend, against the Birmingham Fuel Company, for damages for injuries received while in its employ. Judgment for plaintiff, and defendant appeals. Affirmed.

Plaintiff was injured while serving as a driver in defendant's mine. The first count is framed under subdivision 1, § 3910, Code 1907, and charges a defect in the ways, works, and other things of the defendant, in that the tram track and an upright supporting timber were placed too near together, whereby he was caught between the timber and the moving car and injured. The second count charges that defendant negligently failed to provide a reasonably safe place for plaintiff to work in. The defendant pleaded the general issue and the plaintiff's contributory negligence: (1) In undertaking to uncouple coal cars while they were in motion; (2) in trying to get on the bumpers of the cars and uncouple them while in motion; (3) in alighting from a moving car, whereby he was thrown against the timber; (4) in undertaking to alight from a moving car or bumper in such close proximity to a standing timber as to make it dangerous and likely to injure him; (5) in undertaking to do his work in a dangerous way by trying to get on and alight from a car or crip of cars while in motion, when there was a safe way to perform his duties by uncoupling the cars while not in motion.

Plaintiff testified that he started to get in between cars and uncouple them, and the negro started the team off and the cars jerked, and he started to pull himself out of the way, and they threw him against the timber. This car passed on, and he started to get out, and got caught between the timber and the car. This timber was a roof support, placed between the side track and the main track and standing, according to some of the testimony, too near the track to allow the driver to pass between it and the car on the track. As to whether this was a proper construction or not in this particular locality, and safe or dangerous for workmen, the evidence was in conflict.

A. F. Fite, of Jasper, for appellant.
Ray & Cooner, of Jasper, for appellee.

SOMERVILLE, J. To refute liability in this case, the defendant contends: (1) That the timber was not placed too near the train track for the safety of workmen, but was properly stationed as it was; (2) that even if improperly stationed too near the track, the injury to plaintiff was nevertheless casual, and not to be reasonably anticipated from such a condition; and (3) in any case plaintiff negligently contributed to his injury by his mode of procedure in uncoupling the cars.

[1] The trial judge erroneously told the jury, in his oral charge, that the question as to negligence would be whether or not this post was in fact "too near the rail." This statement of the issue manifestly informs the jury that, if the post in question was "too near" the track, its maintenance in that position was negligence as a matter of law. Apart from the wholly uncertain application of the phrase "too near," this withdrew from the jury the question of the feasibility of any other mode of supporting the roof at that point, and also the question of plaintiff's injury being a natural and probable result to be anticipated from such a location, both of which questions rested upon inferences from the evidence, to be drawn only by the jury. Defendant's exception to this part of the oral charge should have been sustained.

[2] The trial judge refused to give for defendant an instruction that, unless the timber was negligently placed in a place and way that was "ordinarily dangerous," and unless plaintiff was not injured by some other proximate cause, the verdict should be for defendant. The first clause was at least misleading, since it may fairly be understood to mean that the maintenance of such a defect is not actionable negligence, unless it would ordinarily threaten injury, without regard to co-operating causes which are unusual, but which must nevertheless be anticipated as within the range of natural and probable mischance.

[3, 4] So far as we discover from the record, there is no testimony tending to show that plaintiff attempted to uncouple the cars while they were in motion. Charges 11 and 12, hypothesizing such an attempt, were therefore abstract, and were properly refused. Moreover, that theory of the case was sufficiently presented to the jury in given charges 6 and 8.

[5] The mere fact that no employé had ever before, throughout many years of operation, been injured by contact with this post, while strongly persuasive, does not, as a matter of law, disprove negligence in its maintenance. The true rule, quoted from

Ray on Negligence of Imposed Duties, pp. 137, 138, will be found in Bivins v. G. P. Ry. Co., 96 Ala. 325, 327, 328, 11 South. 68, 69:

"That which never happened before, and which in its character is such as not naturally to occur to a prudent man to guard against its happening at all, cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening, and guarding against that remote contingency."

Charge 21 was therefore properly refused.

[6] Given charge 20 instructed the jury that, if the evidence shows that "the manner in which the track and props, posts or upright timbers were placed and constructed had uniformly proved adequate and safe prior to the alleged injury, it was not negligence for the defendant to have continued to use the same in the manner in which they were placed to the time of the alleged injury." The undisputed evidence is that no accident had occurred at this particular point during an operation of six or seven years. Defendant therefore insists that the verdict for plaintiff was contrary to the court's instruction in charge 20. A comparison between the charge and the proof relied on will clearly show the invalidity of this contention.

[7] Defendant insists, also, that the evidence shows, as matter of law, that the action of the driver, Kit Carter, in starting the cars while plaintiff was between or on them, was the independent and efficient cause of the injury, and therefore its sole proximate cause in law. We think, however, that this question, and the question of contributory negligence in its several aspects, were questions for the jury, and that affirmative charges thereon for defendant were properly refused.

[8] The mere fact that plaintiff saw another way of acting, when suddenly called upon to extricate himself from his dangerous position, though it would have conserved his safety, does not per se render him guilty of contributory negligence in resorting to the mode of escape he actually adopted. To have this effect, the danger of the one, and the safety of the other, must be obvious to the reasonable and prudent observer; and, even then, in sudden emergency, the question of due care becomes one for the jury. T. C. I. & R. R. Co. v. Herndon, 100 Ala. 451, 14 South. 287.

[9] It was proper for plaintiff to testify to the rate of his earnings at the time of his injury, to be considered by the jury upon the question of compensation for permanent decrease of earning power, which was an issue in the case. Its consideration was ex-pressly so limited by the instruction of the court.

[10] Witnesses who qualified as experts were properly allowed to state their opinion that a place for work constructed like this one was not a proper place to work; or, more specifically, that the post was too near the track for the safety of workmen. Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 South. 604.

[11] It was not competent for defendant to ask plaintiff—in reference to an alleged call by the driver to plaintiff just before the injury, and plaintiff's alleged response of "all right" thereto—if that was not "the usual way of doing in that entry." The fact that drivers in general were accustomed to calling to the man uncoupling their cars, "How about it?" had no legitimate tendency to show that Carter did so in this instance. Custom may often be admissible to fix a duty, but not to show that it was or was not thus performed in a particular instance.

[12] The fact that the state mine inspector had inspected these mines, and raised no objection to the construction here complained of, is not admissible to show that the construction was proper, in the absence of a statute authorizing him to prescribe or approve the construction and proof that he had done so. Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 South. 604.

For the error pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.

On Rehearing.

SOMERVILLE, J. [13] Without in any way retracting our criticism of that part of the trial court's oral charge upon which a reversal of the judgment was predicated on the original hearing, we are now constrained to hold, upon a very careful analysis of the entire oral charge, and special given charges, that the issue of negligence vel non was fairly submitted to the jury, and that the prima facie error of the language under consideration was thereby cured.

We therefore think and hold that the error in question ought not to work a reversal of the judgment, which is otherwise free from error.

It results that the judgment of reversal must be set aside, and a judgment of affirmance will be entered instead.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.