# Atlantic C. L. Ry. Co. *v.* Enterprise Cotton Co.

### Failure to Deliver Goods.

(Decided January 18, 1917.  Rehearing denied February 15, 1917.
74 South. 232.)

1. **Carriers; Loss of Goods; Nature of Liability.**—Where there was no special contract regarding carrier's liability for shipment of crude oil, the common-law rule of liability will govern.

2. **Carriers; Loss of Goods; Common-Law Liability.**—By common law a carrier is an insurer, and is responsible for all losses except those resulting from the act of God, or the public enemy, or the fault of the shipper.

3. **Carriers; Action for Loss of Goods; Burden of Proof.**—The burden rests upon a carrier to plead and establish that the loss to goods came within the exceptions to the common-law rule of liability.

4. **Carriers; Loss of Goods; Pleading.**—A plea that loss of crude oil shipped by plaintiff was due to plaintiff's negligence in not closing a valve held demurrable because not negativing carrier's negligence.

5. **Carriers; Loss of Goods; Instructions.**—In action for loss of crude oil, where court instructed jury that the carrier was not liable if loss occurred through shipper's fault as alleged in special pleas, the charge as a whole held not erroneous.

6. **Carriers; Loss of Goods; Instructions.**—Refusal of instructions for failure to negative contributory fault of the carrier and to set out carrier's liability as insurer, held proper.

- 7. **Evidence; Opinion Evidence; Loading of Tank Car.**—Where a witness stated his experience of 12 years in loading oil tank cars, sufficient predicate was laid to permit his testimony that a car was properly loaded.  ·

(Sayre, J., dissents.)

APPEAL from Coffee Circuit Court.

Heard before Hon. A. B. FOSTER.       ·

Suit by the Enterprise Cotton Oil Company against the Atlantic Coast Line Railway.  Judgment for plaintiff, and defendant appeals.  Affirmed.

Suit by appellee to recover damages for failure to deliver a tank of crude oil received by the defendant as a common carrier for shipment from Enterprise, Ala., to Portsmouth, Va. The oil was loaded on the cars by the plaintiff.

The defendant filed several special pleas. Those numbered 5, 6, 7, and 8, demurrers to which were overruled, set up as defense that the valve on the inside of the oil tank which prevented the oil from passing into the pipe through which it was to be emptied out of the car was not properly adjusted by plaintiff when the tank was loaded; that the cap on the end of the discharge pipe was not securely fastened when the tank was loaded; that both the valve and the cap on the discharge pipe were improperly adjusted by the plaintiff—all of which was impossible of discovery by external examination of the car; and that on account of such default on the part of plaintiff in loading the car, the oil emptied out while in transportation and was lost. The cause went to the jury on the plea of the general issue, and the above-noted special pleas.

Pleas 3 and 4, to which demurrer was sustained, are as follows:

"3. That the tank containing the crude oil was on a car which was loaded with said oil by the plaintiff, and that the tank containing this oil had an adjustable valve in the bottom of it by which the opening of the pipe through which the oil was to be emptied out of said tank closed the said opening of the pipe. And defendant avers that the said oil was lost out of the tank by reason of the failure of the plaintiff to properly adjust said valve over the opening of said pipe, and that thereby the oil contained in said tank ran out of the same and was lost.

"4. That the oil alleged to have been lost to the plaintiff was put by the plaintiff into a tank which was on a car, for transportation by this defendant, and that this tank was constructed so as to provide for the emptying of said oil out of the tank by means of a pipe at the bottom of said tank, and that the opening to said pipe was closed by an adjustable valve which prevented the oil from getting into the pipe through which it was to be emptied. And defendant avers that the plaintiff failed to properly close the said valve, and as a result thereof the oil emptied through the pipe onto the ground and was lost in transportation. And defendant avers that the loss of the oil was due to the failure

of the said plaintiff to properly close the said valve, as it was his duty to do."

The following charges were given at appellant's request:

"A. The court charges the jury that the defendant is not an insurer of the act of the plaintiff's servants or agents in the loading of their car.

"B.   The court charges the jury that if they are reasonably satisfied that the oil was lost without fault of the defendant, then their verdict must be for defendant.

"1. The court charges the jury that if the car of oil was properly handled in transportation, and if they believe the car was not properly loaded, and that the improper loading could not have been discovered by the external examination of the car, then the verdict must be for defendant.

"2. The court charges the jury that defendant is not an insurer of the delivery of the oil against the acts of the plaintiff's agents or servants in loading the car.

"3. The court charges the jury that the defendant only insured the delivery of the oil provided it was properly loaded.

"4. The court charges the jury that the burden is upon plaintiff to show that the car was properly loaded."

The refused charges read as follows:

"A. The court charges the jury that if the valve was properly adjusted and the cap on the end of the discharge pipe properly put on at the time of loading the car, but either of them became unadjusted in transportation so as to cause the loss of the oil, without fault of defendant, then their verdict must be for defendant.

"1. The court charges the jury that if they believe that the valve was not properly set, and that by reason of its being open, the oil was lost, their verdict must be for defendant.

"2. The court charges the jury that if they believe the oil was lost on account of the failure of the plaintiff's agents or servants to properly adjust the valve in the tank car and the cap on the discharge pipe, their verdict must be for defendant."

"6. The court charges the jury that the only duty that defendant owed the plaintiff was to properly handle the car in transportation, and if properly handled, and the car was not properly loaded—which could not have been discovered by an external examination of the car—their verdict must be for defendant."

"11. The court charges the jury that the defendant discharged its duty to plaintiff when it properly inspected the car and properly handled it."

On submission of the cause to the jury on the issues above indicated, there was verdict and judgment for the plaintiff, and the defendant prosecutes this appeal.

JOHN R. TYSON for appellant.   W. W. SANDERS for appellee.

GARDNER, J.— (1) There is in the record no indication of any special contract which sought to exempt the shipment of the tank of crude oil from the common-law rule of a common carrier's liability.  This rule therefore prevailed in the consideration of this cause, and it was given application by the court below.

(2) Speaking of this rule our court in *Steele & Burgess v. Townsend*, 37 Ala. 247, 79 Am. Dec. 49, said:  "By the common law, the carrier is responsible for all losses, except such as result from the act of God, or the public enemy.  Hence his liability is not confined to such losses as are the consequences of his own negligence, or want of skill.  He is liable for losses by accident, mistake, and numerous unavoidable occurrences, not falling under the head of acts of God or the public enemy, and against which it is not within the reach of human vigilance or foresight to provide.  For losses occasioned by the wrongful acts of third persons, by accidental fires, by robbery, or by the violence of mobs, which neither the carrier nor his agents can resist, or by any vigilance avoid, he is responsible.—1 Smith's L. C. 315; 2 Ohio St. R. 137.  The liabilities of a common carrier are thus distinguished into two classes:  The one, a liability for losses by neglect, which is the liability of a bailee; the other, a liability for losses by accident, or other unavoidable occurrence, which is the liability of an insurer."

And in the more recent case of *A. G. S. R. R. v. Quarles*, 145 Ala. 436, 40 South. 120, 5 L. R. A. (N. S.) 867, 117 Am. St. Rep. 54, 8 Ann. Cas. 308, is the following:  "As a general rule the undertaking of a common carrier to transport goods to a particular destination includes the obligation of a safe delivery of them, within a reasonable time, to the consignee.  And the contract of carriage is one of insurance against every loss or damage, except such as may be occasioned by the act of God or the public enemy or the fault of the owner of the goods or his agent.  And in this

state the shipper makes a prima facie case against the carrier when he shows the goods were not delivered, and, in order for the carrier to relieve itself of the absolute liability for their loss as an insurer, it must bring itself within the exception relied upon as an excuse for its failure to deliver."

See, also, *Boon & Co. v. Steamboat Belfast*, 40 Ala. 184, 88 Am. Dec. 761, and *Walter v. A. G. S. R. R. Co.*, 142 Ala. 474, 39 South. 87; 4 R. C. L. 696-704.

While the language of the decisions frequently confine the defenses of a common carrier against its common-law liability to that of loss occasioned by the act of God and the public enemy, yet in fact, as pointed out by this court, there is a third defense—that of loss occasioned by the fault of the owner of the goods or his agent. This is emphasized in the case of *McCarthy & Baldwin v. L. & N. R. R. Co.*, 102 Ala. 193, 14 South. 370, 48 Am. St. Rep. 29, where it was said: "It is manifest that the case made by the averment of these facts tendered no issue of negligence vel non on the part of the defendant. The contract averred is an unconditional common-law contract of carriage without reservations or exceptions. By its terms the defendant insured the safe delivery of the goods to the consignee, and assumed liability for any loss or injury resulting from any cause except such as afforded the carrier a defense at common law. The strictest proof of all possible care on the part of the carrier in the transportation and delivery of the goods would have been no defense, and, of course, proof of the carrier's negligence was in no wise essential to a recovery. The defenses, which a carrier under such a contract may interpose to an action for failure to deliver in good condition, are commonly mentioned as two only, namely, that the loss or injury was due either to the act of God, or to the act of a public enemy. But there is in reality a third resting on the fault of the owner of the goods or his agent. This latter defense, while the fault involved in it may consist merely of negligence imputable to the plaintiffs, is in no sense, and bears little analogy to, the defense of contributory negligence, available in actions against common carriers of passengers, sometimes in actions against carriers of life stock, and even, it may be, in actions against carriers of goods—inanimate things—under contracts of affreightment, which limit liability to loss or injury occasioned by the carrier's negligence."

(3, 4) It was this latter defense—loss occasioned by the fault of the shipper who loaded the car—which was interposed by the defendant in this case. It was ruled in the above-mentioned case of *McCarthy, etc., v. L. & N. R. R. Co.*, that as the burden rested on the common carrier to plead and establish that the loss or injury came within the exceptions to the common-law rule of liability because a result of the act of God or the public enemy, the burden likewise rested upon the carrier to aver and establish the other exception to that rule of liability, the fault of the shipper; and to do so "he must bring himself entirely and perfectly within it by negativing all contributing fault of his own." Measured by this rule, pleas 3 and 4 were subject to the demurrer interposed thereto.

Under the common-law rule of liability recovery for failure to deliver the goods is not dependent upon proof of negligence or fault on the part of the carrier, for the liability, aside from any question of exceptions to the rule which are not embraced in this statement, is that of insurer and would include a liability on the part of the carrier for loss occasioned by third persons, intermeddlers, brawlers, or thieves.

The evidence for plaintiff went to show that the tank was properly loaded with oil, that the valve was securely adjusted and the cap properly screwed on the discharge pipe. The car of oil was several days in transit, and the evidence for the defendant tended to show that it was handled in a careful manner, being externally inspected, and that the oil leaked out after the car had left Savannah, Ga., on its way to Portsmouth. There was also evidence that the valve was "unseated," and that the cap had fallen off the discharge pipe.

(5) The trial court was careful to instruct the jury that no liability attached to the carrier if the loss was occasioned by the fault or neglect of the shipper in any particular, as set out in the special pleas.

(6) Some of the refused charges were faulty for failure to negative any contributing fault on the part of the carrier, and others ignored the rule of liability controlling in the cause, that of insurer; but there was no reversible error in their refusal.

Careful consideration has been given the cases cited by counsel for appellant: *Hutchison v. C. & St. P. R. R.*, 38 Minn. 524, 35 N. W. 433; *Lee v. Raleigh & G. R. R.*, 72 N. C. 236; *Newby v. Chicago, etc., Ry.*, 19 Mo. App. 391; *Gulf, etc., R. R. v. Wittne-*

[Atlantic C. L. Ry. Co. v. Enterprise Cotton Co.]

*bert,* 161 Tex. 368, 108 S. W. 150, 14 L. R. A. (N. S.) 1227, 130 Am. St. Rep. 858, 16 Ann. Cas. 1153. The latter case was not of the same kind of suit as here involved, and while some of the language used may be pertinent to the question under consideration, the case itself is not in point. We do not mean to indicate, however, that there is any conflict between it and the conclusion we have here reached. The other cases involve questions arising from the shipment of live stock, and under special contract, it appears. They seem to hold that in the shipment of live stock another exception has been added to the common-law rule in favor of the carrier against injuries arising from the nature and propensities of the stock, which could not be prevented by foresight or vigilant care.—4 R. C. L. 703. Such is also the holding of this court in *A. C. L. Ry. Co. v. Rice,* 169 Ala. 265, 52 South. 918, 29 L. R. A. (N. S.) 1214, Ann. Cas. 1912B, 389. That question, however, is not before us now for consideration.

(7) One of plaintiff's witnesses, who it appears was either engaged in the work or was superintending the loading of the car, after stating his experience of 12 years in loading oil tank cars, was permitted to testify that this car was properly loaded.

Defendant's objection to the question on the ground that it was a question for the determination of the jury and was not subject of expert testimony was overruled, and the ruling of the court is assigned as error. A similar question was treated in *McCarthy & B. v. L. & N. R. R. Co., supra,* wherein the court said: "The only  *  *  *  error we find in the record lies in the exclusion of the testimony of the witness Slater, to the effect that these cars were 'well and carefully loaded.' This was the mere opinion of the witness, it is quite true, but we think a sufficient predicate had been laid to render his opinion on that subject competent evidence."

The following authorities are also cited as supporting that view: *So. Ry. Co. v. Stollenwerck,* 166 Ala. 556, 52 South. 204; *Stoutz Mt. Coal Co. v. Tedder,* 189 Ala. 637, 66 South. 619; *Cohn & Goldberg Co. v. Robbins,* 159 Ala. 289, 48 South. 853; *Hood v. Disston & Sons,* 90 Ala. 377, 7 South. 732; *St. L. & S. F. R. R. Co. v. Brantley,* 168 Ala. 579, 53 South. 305; *Shook v. Pate,* 50 Ala. 91; *Spiva v. Stapleton,* 38 Ala. 171.

We find no reversible error in the record, and the judgment of the court below will be affirmed.

Affirmed. All the Justices concur, except SAYRE, J., who dissents.