(80 South. 399)

## CONNORS–WEYMAN STEEL CO. v. HARLESS.   (7 Div. 952.)

(Supreme Court of Alabama.   Nov. 21, 1918.
Rehearing Denied Dec. 19, 1918.)

1. APPEAL AND ERROR $\Longleftrightarrow$933(1)—REVIEW—JUDGMENT ON MOTION FOR NEW TRIAL.

General rule in regard to disturbing judgment of lower court on motion for new trial has application where evidence was had orally before court.

2. APPEAL AND ERROR $\Longleftrightarrow$1005(4)—REVIEW—QUESTION OF FACT—PHYSICAL IMPOSSIBILITY.

In action for injuries to servant when red hot iron bar passing through rollers curved and went through thigh, Supreme Court will not hold, to reverse action of trial court in denying master new trial, that it was physically impossible for accident to have been caused as contended for by servant.

3. EVIDENCE $\Longleftrightarrow$544 — QUALIFICATION OF SERVANT AS EXPERT.

In action for injuries to servant when iron bar passing between rollers curved and went through thigh, plaintiff, who had been employed in mill for two years and at rolls for four or five months, was qualified to testify as expert as to cause of injury.

4. EVIDENCE $\Longleftrightarrow$506—EXPERT OPINION AS TO MATERIAL ISSUE.

In action for injuries to roller mill employé when iron bar passing between rollers curved and went through thigh, opinion testimony of plaintiff, qualified as an expert, as to cause of injury, *held* not inadmissible, because in practical affirmation or disaffirmation of material issue.

5. APPEAL AND ERROR $\Longleftrightarrow$1050(1) — HARMLESS ERROR—OPINION EVIDENCE.

In servant's action for injuries, where plaintiff gave facts on which he based opinion or conclusion as to cause of injury, Supreme Court will not hold trial court in error because of admission of his conclusion, as to material issue.

Appeal from Circuit Court, Shelby County; Lum Duke, Judge.

Suit by Virgil H. Harless against the Connors-Weyman Steel Company. From judgment for plaintiff, defendant appeals. Affirmed.

Appellee brought suit against the appellant for the recovery of damages, for personal injuries received while engaged in discharging the duties of his employment in the rolling mill of appellant.

There are numerous counts in the complaint; but those relied upon are based upon alleged defects in the rolls, in that the rolls were negligently lined or adjusted. Some of the counts are based upon a failure of defendant to furnish the plaintiff a reasonably safe place in which to work. The rolls are the particular pieces of machinery at which the plaintiff worked at the time of his injury.

Defendant pleaded the general issue, and contributory negligence on the part of plaintiff, it being insisted that plaintiff's injuries proximately resulted not from any defects in the rolls, or their adjustment, but from the unsafe condition of the guard or guides attached to the rolls; it being plaintiff's duty to keep the guard or guides in safe condition.

The only errors assigned are based upon the rulings of the court in the admission of evidence, and on its refusal to grant defendant's motion for a new trial because of the verdict being contrary to the weight of evidence.

The evidence for the plaintiff tended to show that at the time of the injury he (plaintiff) was working as a "rougher" in front of a set of roughing rolls, which are cylindrically shaped, about 4½ feet long and 9 inches in diameter, three in number, and placed horizontally one above the other. They are so operated that the top and bottom rolls revolve in an opposite direction. These rolls have grooves or passes of varying sizes in them. Into these grooves or passes soft red hot steel bars or billets are inserted, and the revolving of the rolls draw them through, reducing them in size and increasing them in length. There is a guard box for each pass or groove in use, the same being situated on the side of the rolls where the billets or bars come out. The guide is inserted at the bottom of the pass or groove, and the side guards fit against the guide, and, with the top guard, form what is called the guard box. The end of the guide, which fits in the pass, is triangular in shape. The guard box extends about 8 or 10 inches from the roll. The hole through this box is larger than the pass or groove. The purpose of the guide is to start the iron straight and keep it from wrapping around the rolls, and, as testified by the appellee, is supposed to keep it straight for 8 inches. The rolls when in operation revolve very rapidly. The delivery and speed of the bars as they come from the pass in the rolls is described by one witness as being "as fast as you can move your arm back."

It was the duty of the plaintiff, as a rougher, with the aid of a pair of tongs to send through the passes or grooves in said rolls soft red hot steel bars or billets, which were received by the rougher on the opposite side of the rolls, and by him passed back to the plaintiff through the next groove or pass in use, and so on until the bar was rolled out to the required size and length. The plaintiff had no duties in regard to inspecting or changing the rolls or adjusting them, but it was his duty to help to change them; and, further, his duty to keep in proper order the guides and guard box. It was

---

the duty of the "roller boss" to keep the rolls properly adjusted, lined up, and kept in proper repair.

The testimony for the plaintiff further tended to show that just prior to the injury he had examined the guides and guard box, and they were in order and good condition. There was further evidence from which the jury could infer that the upper and middle rolls had been lined up just prior to the injury, and that the liners had worked or slipped out at one end; that the bar which injured the appellee showed an "overfill," a raised place on it one-sixth of an inch larger than the bar coming through the hole in the guard box. The guard box does not fit tight over the guide, but there is a little room for play, and it is wider than the guide. There is nothing holding the liners, and when the mill is in operation there is considerable vibration.

At the time of his injury plaintiff had been working only a short time, having sent two or three red hot bars through the rolls; these came out straight. Plaintiff testified that the one which injured him came out in a circle, saying:

"It just circled right into me instead of coming out straight. The red hot billets came out very fast. When I saw the billet was coming out curving, I tried to catch it and I could not do that, and I sprang back and struck the steps, and I fell against the steps behind, * * * and when I struck the steps the red hot steel bar went through my leg."

He stated further that the bar went through his thigh from the "front to the back"—cut the leaders and muscles. The testimony tended to show a permanent injury, and that the bar which produced the injury was about an inch square and about 8 feet in length.

Plaintiff was about 25 years of age, a married man, with a wife and one child, and was earning at the time $5 and $6 per day. He had been working at the roller mill of defendant for about 2 years, and had been working at this particular position of rougher for 4 or 5 months.

The evidence for the defendant tended to show that the guide box was out of adjustment, and that caused the red hot bar to turn toward the plaintiff and cause the injury, and that there was no defect whatever in the rolls, lining, or adjustment.

In the course of the examination, the plaintiff was asked the following question:

"I will ask you to state to the jury what, in your opinion, caused the iron, this rod or billet, to turn to the left as it came out."

Defendant objected to the question on the ground that it called for incompetent, immaterial, and irrelevant testimony, which objection was overruled, and to which exception was reserved. The witness then answered:

"Well, my best judgment as to what caused the iron to come out crooked is the rolls had been raised up in order to make the passage larger so as it would take the iron and they wound the rolls up and put in those liners, and it had been running for about 30 minutes and those liners worked out, and that let one end of the rolls down and the other up."

R. H. Thach and Cabaniss & Bowie, all of Birmingham, for appellant.

Longshore, Koenig & Longshore, of Columbiana, for appellee.

GARDNER, J. It is most earnestly insisted by counsel for appellant that, the judgment appealed from should be reversed for the refusal of the court to grant a new trial on the ground that the verdict of the jury was contrary to the great weight of the evidence. There was sharp conflict in the evidence for the respective parties, the defendant insisting that the guide or guard box was not in proper condition, and that, therefore, the accident was the result of plaintiff's own negligence; while, on the other hand, the plaintiff contended that the rolls were not properly adjusted, and that the liner upon one end of the roll worked out, causing the space at one end to be greater than at the other, and the red hot iron bar (with an "overfill" of one-sixth of an inch), being forced through the rolls at a rapid speed, was deflected from a straight course and turned or curved in the direction of its smaller side. The issues thus resting upon these two theories seem to have been fairly and fully presented to the jury, resulting in a verdict for the plaintiff.

[1] It is conceded that the rule in regard to disturbing the judgment of the lower court upon the question of motions for a new trial, so often quoted from the familiar case of Cobb v. Malone, 92 Ala. 630, 9 South. 738, has application in the instant case, where the evidence was had orally before the court. Hatfield v. Riley, 199 Ala. 388, 74 South. 380.

The able brief of counsel for appellant does not question this rule in ordinary cases. But they insist that this is not a case where the inference from the evidence is involved, but that their case is based on physical facts, as to which there can be no plausible controversy. It being insisted that, from the evidence of the plaintiff himself, viewed in the light of nature's unchanging laws, and the unvarying principles of mechanics, the plaintiff's theory as to the proximate cause of the injury is so entirely at variance with the physical laws as to demonstrate that it is entirely untrue, and that, therefore, the verdict is unjust and unsupported in law and fact, citing Elliott on Railroads (2d Ed.) § 1703; Wichita I. & C. S. Co. v. Sheppard, 82 Kan. 509, 108 Pac. 819, 28 L. R. A. (N. S.) 648; Louisville Water Co. v. Lally, 168 Ky. 348, 182 S. W. 186, L. R. A. 1916D, 300; L.

& N. R. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471.

[2] We are asked to hold, in effect, that it was physically impossible for this red hot iron bar, about one inch square, with an "overfill" on the edge of about one-sixth of an inch, to be deflected from its course, and caused to circle or curve by reason of such a defect in the rolls through which it was passing, as contended by appellee. The evidence tends to show that the bar was eight feet in length, red hot, and therefore soft, and was forced through the roll at a very rapid rate of speed. We have previously noted this particular bar, showing an "overfill." There was evidence also tending to show that the roll was tried out after the injury, and the bar curved to the left as did the one which injured the plaintiff, and, further, that when a liner was inserted the bar came out straight. We are of the opinion that this is a matter as to which the average layman is not, and cannot be, well informed. But, after a careful consideration of the evidence in this case, in the light of the elaborate brief of counsel for appellant, we are unwilling to hold that it is physically impossible for the accident to have been caused as contended for by the appellee. This is the sole basis upon which the appellant rests his right of reversal on the action of the court in denying a new trial.

[3] It is insisted there was reversible error in permitting the plaintiff to give as his opinion that the bar was caused to curve to the left on account of the liner having worked out from under the roll. The lower court evidently concluded that the plaintiff had sufficiently qualified himself as an expert to give an opinion upon this particular subject.

"It is settled with us that the determination of the qualification vel non of a person to form and give an expert opinion on a definite subject is a preliminary matter; that its decision is addressed to the sound discretion of the trial court under the evidence bearing upon that preliminary inquiry. * * * Under the rule long prevailing here, the finding of the court upon the facts presented on that inquiry will not be held for error, unless the ruling is plainly erroneous." Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 South. 604; Alabama C. C. & I. Co. v. Heald, 168 Ala. 626, 53 South. 162.

In Alabama C. C. & I. Co. v. Heald, supra, it was held:

"To entitle a witness to answer as an expert, it is true 'he must, in the opinion of the court, have special acquaintance with the immediate line of inquiry; yet he need not be thoroughly acquainted with the differentia of the specific specialty under consideration. * * * A general knowledge of the department to which the specialty belongs would seem to be sufficient.'"

The plaintiff had been employed in this particular rolling mill for a period of two years, and as "rougher" at the roughing rolls for four or five months. The nature of his work is discussed in the statement of the case, as well also his duties in reference to assisting in lining up the rolls, and the keeping of the guard box in proper condition. During this period of time, he, of course, had had occasion to constantly observe the red hot bars as they went in and came out of the rolls, as they were constantly and rapidly handled by him.

[4] We are clear to the view that the conclusion of the trial court as to his qualification as an expert upon this particular subject was not erroneous.

"The fact that an otherwise proper question propounded to an expert witness will elicit an opinion from him in practical affirmation or disaffirmation of a material issue in a case will not suffice to render the question improper. If the earlier cases cited in the brief for appellant conclude to the contrary, they are not in accord with more recent rulings." Harbison-Walker Refractories Co. v. Scott, 185 Ala. 641, 64 South. 547.

We therefore conclude there was no error in permitting the witness to answer the question by giving his opinion of the cause of the deflection of the iron bar. A. C. L. R. R. Co. v. Enterprise Cotton Oil Co., 74 South. 232;[1] Burnwell Coal Co. v. Setzer, supra; Pope v. State, 174 Ala. 63, 57 South. 245; So. Ry. Co. v. Stollenwerck, 166 Ala. 556, 52 South. 204; Stouts Mt. Coal Co. v. Tedder, 189 Ala. 637, 66 South. 619; Alabama C. C. & I. Co. v. Heald, supra.

[5] Moreover, the witness gave the facts or reasons upon which he based his conclusion. Under such circumstances, it was held by this court in Blackmon v. Cent. of Ga. Ry. Co., 185 Ala. 635, 64 South. 592, that the trial court will not be held in error because of the admission of such testimony, as the jury not only had his opinion, but also had the reasons and facts upon which the opinion was based. See, also, in this connection, Evans v. State, 120 Ala. 269, 25 South. 175; 17 Cyc. 60.

It results that we find no reversible error in the record, and the judgment appealed from will accordingly be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.

[1] 199 Ala. 57.