(89 South. 528)

## WOODMEN OF THE WORLD v. ALFORD et al. (3 Div. 455.)

(Supreme Court of Alabama. Dec. 16, 1920. Rehearing Denied May 5, 1921.)

**1. Insurance ⊕⧋815(1)—Allegation of ownership sufficient in action on certificate.**

A petition by beneficiaries named in certificate of insurance *held* to sufficiently allege ownership in the beneficiaries, where it alleged a promise to pay amount of insurance to beneficiaries named in certificate, and that plaintiffs were such beneficiaries.

**2. Insurance ⊕⧋815(1)—Petition held to show certificate was in force at death of insured.**

Allegation by beneficiaries named in certificate of insurance that "said L. A. (insured) died on, to wit, the 7th day of April, 1919, while such member was in good standing, and after the second year of his membership, of which defendant has had notice," was sufficient to show that certificate was in force at the time of the death of insured.

**3. Insurance ⊕⧋815(1)—Complaint held to show duty of payment of insurance under mutual benefit certificate.**

Allegations by beneficiaries named in a certificate of insurance that plaintiffs claimed of the defendant mutual benefit association a certain amount of money, and that on a certain date defendant issued certificate of insurance upon the life of the decedent wherein it agreed to pay a certain amount in case of the death of insured while in good standing, and that the beneficiaries therein named were, by and with the consent of the defendant, and at the request of insured, changed from time to time, and by and with the consent of defendant and at the request of insured plaintiffs were named as beneficiaries therein on a certain date, and that insured died on a certain date while in good standing, of which the defendant had notice, were sufficient to place on defendant the duty of payment of the insurance to the plaintiff.

**4. Judges ⊕⧋42—Judge may be disqualified by membership in defendant beneficial society.**

Disqualifications of judges under Code 1907, § 4626, are not exclusive of those imposed by common law, and if a judge as holder of a beneficiary certificate has a direct and immediate interest in the general and special funds and properties of a mutual benefit society to be affected by the suit, or is or will be subject to assessment for the payment of benefit certificate, he should not preside at the trial of an action by beneficiaries against the benefit association on the death of their insured.

**5. Discovery ⊕⧋70—Action of court on motion for judgment for failure to answer interrogatories held not to require reversal.**

That plaintiff moved court for judgment against defendant for failure to answer interrogatories propounded under Code 1907, §§ 4049, 4055, did not require a reversal of a judgment for plaintiff, in that defendant made an admission under "threat" by the court to enter judgment against it, since, on failure of

full answer and on appropriate motion, the court was in duty bound to compel compliance with the statutory provisions.

**6. Insurance ⚖➡718—Terms of policies and by-laws of benefit society construed favorably to insured.**

All terms and provisions of policies of insurance shall be construed most strongly against the insurers, and by-laws of a mutual benefit society shall be construed more favorably to the insured.

**7. Insurance ⚖➡724(1)—Conditions of contract may be waived.**

Conditions of a policy of insurance or a certificate of insurance of a mutual benefit society, intended for the benefit of the insurer, may be waived by one having authority.

**8. Insurance ⚖➡719(5)—Amendment as to increased rates held to apply only to members changing occupation after issue of certificate.**

An amendment of constitution and by-laws of a mutual benefit society to the effect that, "if a member engages in any of the occupations or businesses mentioned in this section, he shall within thirty days notify the clerk of his camp of such change of occupation," and pay 30 cents for each $1,000, in addition to the regular rate, *held* only applicable to those members who changed their occupations after the issue of their certificates.

**9. Insurance ⚖➡719(1)—Only existing laws of mutual benefit society presumed to be known, but members may agree to be bound by future laws.**

Only existing laws of mutual benefit society or order are presumed to be known, and only in reference to them is it presumed the contract evidenced by a beneficiary certificate was made, and though such a corporation has not the power by laws of its own enactment to disturb or divest rights which it has created, or impair the obligation of its contracts, or to change its responsibilities to its members, or to draw them into new and distinct relations, yet the members may contract in reference to laws of future enactment, or may agree to be bound and affected thereby as if such laws existed at the time of entering into the contractual relation, and may consent that such laws thereafter enacted may form a part of or modify or vary the contract.

**10. Insurance ⚖➡689 — Statute relating to contracts held to apply only from date of approval.**

Gen. Acts 1911, p. 713, § 20, forbidding a waiver of certain provisions of constitutions and by-laws of mutual benefit societies by subordinate bodies, officers, or members thereof, has application only from the date of its approval, and, while a member of a society may have contracted prior to the passage of the act that the laws of the society existing at the time of the creation of the relation might be changed by the society at any future date, such agreement was not a contract for a change of organic law, and such legislative enactment should not be given retroactive effect.

**11. Insurance ⚖➡761—Effect of reinstatement of member of mutual benefit society without compliance with constitution and by-laws.**

Where constitution and by-laws of mutual benefit society provided that a suspended member might be reinstated within 10 days of the date of suspension by payment of all arrearages and dues, if in good health, but that after the expiration of 10 days, and within 3 months of the date of suspension, before reinstatement should become effective, the suspended member must pay all arrearages and dues and deliver a written statement and warranty that he was in good health "and waiving all right thereto if such written statement and warranty be untrue," the payment by insured to the local clerk of all arrearages within 10 days had the prima facie effect of reinstatement, subject to be defeated by the plea and evidence on society's part that at the time of payment the assured was not in good health, but after the expiration of 10 days the payment of arrearages must be accompanied by written statement of good health.

**12. Evidence ⚖➡506—Testimony held to amount to inference to be drawn by jury.**

In an action on a mutual benefit certificate, the answer, "Yes, sir," to the question, "Was Mr. A. (insured) in good standing at the time he died?" and the answer, "I would term it that he was," to the question, "So was he, or was he not, in good standing at the time of his death?" *held* to amount to an inference to be drawn by the jury from the evidence submitted, and were not permissible, not coming within the exception of expert testimony.

**13. Principal and agent ⚖➡21—Question as to agency held proper.**

In an action by beneficiaries against mutual benefit society, there was no error in asking a witness "if he was the only man in M. representing that camp, the Sovereign Camp," to which he answered "Yes, sir," since it called for the fact of agency at M. and not for the extent or scope of his authority.

On Rehearing.

**14. Insurance ⚖➡815(1)—Count held not to present issues sought to be especially pleaded.**

A count in an action by beneficiaries against a mutual benefit society under a certificate of insurance *held* not sufficiently broad to present issues concerning good standing of insured at the time of his death, sought to be especially pleaded, to which pleas demurrer was sustained.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by Will Alford and others against the Woodmen of the World on beneficial insurance certificate. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Count 6 is as follows: Plaintiffs claim of the defendant $3,000, with interest thereon, for that the defendant is a fraternal beneficiary association, issuing policies or certificates of insurance on the lives of its mem-

bers; that on, to wit, April 24, 1895, the defendant issued a policy or certificate of insurance upon the life of L. H. Alford, who was at that time a member of such association, wherein the defendant agreed to pay the beneficiary therein named the sum of $3,000 in case of the death of the said L. H. Alford after the second year of his membership, while in good standing.

Plaintiffs aver that the beneficiaries therein named were, by and with the consent of the defendant, and at the request of the said L. H. Alford, changed from time to time, and on, to wit, March 21, 1919, by and with the consent of the defendant, and at the request of said L. H. Alford, plaintiffs were named as beneficiaries therein. Plaintiffs aver that said L. H. Alford died on, to wit, the 7th day of April, 1919, while such member was in good standing, and after the second year of his membership, of which defendant has had notice.

The following are the pleas referred to in the opinion:

(8) For further answer to the complainant, and separately and severally to each count thereof, defendant says that its constitution and laws are and constitute a part of the contract sued upon; that said constitution and laws provides as follows:

"Section 109. Every member of this order shall pay to the clerk of his camp each month one assessment payment as required by section 56, which shall be credited and known as Sovereign Camp fund, and he shall also pay such camp dues as may be required by the by-laws of his camp. He shall pay any additional assessment for the Sovereign Camp fund and camp dues, or either, which may be legally called. If he fails to make any such payment on or before the first day of the month following he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

Section 115 of the said constitution and laws provides:

"Should a suspended member pay all arrears and dues to the clerk of his camp within ten days from the date of his suspension and if in good health and not addicted to the excessive use of intoxicants, or narcotics, he shall be restored to membership and his beneficiary certificate again become valid.

"After the expiration of ten days and within three months from the date of suspension of a suspended member to reinstate he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed that he is in good health, and waiving all rights thereto if such written statement and warranty be untrue.

"Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and if any of the representations or statements made by said applicant are untrue then said payment shall not cause his reinstatement nor operate as a waiver of the above conditions.

"Section 118. No suspended member shall be reinstated whose health is at the time impaired. Should any clerk knowingly violate this section he shall, on proof thereof, be suspended from his office by the Sovereign Commander and expelled from the order by his camp.

"Section 119. A member suspended for nonpayment of assessments or dues is not entitled to any benefits of the order."

Defendant alleges that said Alford was suspended on the 1st day of April, 1914, for the nonpayment of his assessment for the month of March, 1914; that on, to wit, the 18th day of April, 1914, said Alford, after having been suspended for more than 10 days, paid to the clerk of his camp the regular assessment, but failed to deliver to him a written statement and warranty signed by himself, and witnessed that he was in good health, wherefore he was never reinstated, his beneficiary certificate is null and void, and defendant is not indebted to the plaintiff.

(9) The defendant adopts its eighth plea down to and through section 119 of the constitution and laws as therein set out, and makes the same a part of this plea and in addition thereto adds the following: Defendant alleges that said Alford was suspended on the 1st day of April, 1914, for the nonpayment of his regular assessment for the month of March, 1914, and remained suspended for more than 10 days; that after he had been suspended for 10 days he attempted to become reinstated, and paid to the clerk of his camp the regular assessment for which he was in arrears, but at the time he made said payment he was not in good health, for that he was suffering from diabetes; therefore, according to the constitution and laws above set out, he never became reinstated, and never gained his good health from that time until he died, wherefore defendant is not indebted to the plaintiff.

(11) The defendant adopts its eighth plea down to and through section 119 of the constitution and laws as therein set out and makes the same a part of this plea, and in addition thereto adds the following: The said L. H. Alford committed a fraud upon the defendant in this, that he was suspended from defendant order at the end of the 1st day of April, 1914, for the nonpayment of his assessment for the month of March, 1914; that on the 18th day of April, 1914, the said Alford went to the clerk of his local camp and offered to pay all arrears for regular assessments and dues for the purpose of reinstating himself as a member; that at the time he was suspended and at the time he paid said arrearages to said clerk at some time prior thereto he had been and was suffering from diabetes; that said Alford knew, or had been informed by his physician before he made said payment to said clerk, that he was suffering from diabetes, and at the time he made said payment he had been suspended for more than 10 days, and, having

knowledge or having been informed by his physician that he was suffering from diabetes, nevertheless he failed to notify or inform said clerk that he was suffering from said disease, and concealed his true physical condition from said clerk, and from this defendant, and defendant never discovered said Alford's true physical condition until after his death; wherefore defendant, by reason of the concealment of his physical condition, treated him as having been reinstated. Defendant says that, on account or by reason of the fraud above set out, said Alford was never reinstated, and it is not indebted to plaintiffs.

C. H. Roquemore, of Montgomery, for appellant.

The trial judge should have recused himself. 196 Ala. 327, 71 South. 404; 152 Ala. 544, 44 South. 648; 168 Ala. 551, 53 South. 213; 154 Ala. 637, 45 South. 890; 139 Mich. 148, 102 N. W. 656; 39 Atl. 1098; 7 Ala. App. 255, 60 South. 1006; 144 Ala. 497, 39 South. 354; 61 Ala. 172; section 4626, Code 1907. The court erred in sustaining demurrers to plea 11. 17 Ala. App. 53, 81 South. 690, and cases there cited. Alford became automatically suspended. 160 Ala. 334, 49 South. 354. Counsel discuss other assignments of error, but without further assignments of authority.

L. A. Sanderson and Hill, Hill, Whiting & Thomas, all of Montgomery, for appellees.

The judge was not incompetent to try. 179 Ala. 136, 59 South. 584; 3 C. J. 1432. Rule 45 is peculiarly applicable here, and should result in an affirmance. 29 Cyc. 67, 72; 198 Ala. 488, 73 South. 816; 71 Ala. 436, 46 Am. Rep. 332; 145 Ala. 287, 39 South. 751; 184 Iowa, 10, 168 N. W. 276, L. R. A. 1918F, 1116; 24 Ga. App. 762, 102 S. E. 174; 128 N. C. 465, 39 S. E. 55, 54 L. R. A. 605, 83 Am. St. Rep. 699. The case was tried as if the pleas were in, and no injury resulted. 201 Ala. 376, 78 South. 232; 201 Ala. 446, 78 South. 824; 78 South. 869; 200 Ala. 308, 76 South. 74; 194 Ala. 687, 70 South. 115; 203 Ala. 42, 81 South. 833.

THOMAS, J. The suit was by the beneficiaries named in a certificate of insurance of the Woodmen of the World, a corporation, on the life of L. H. Alford.

[1-3] The sixth count of the complaint sufficiently stated a cause of action. It alleged a promise to pay the amount of the insurance to the beneficiaries named in the certificate, and that plaintiffs are such beneficiaries. This was a sufficient allegation of ownership. That the certificate issued on April 24, 1895, was in force at the time of the death of insured is shown by the averments that the policy or certificate was an agreement to pay to beneficiaries the sum of $3,000 in case of the death of insured after the second year of his membership while in good standing, and that—

"Said L. H. Alford died on, to wit, the 7th day of April, 1919, while such member was in good standing, and after the second year of his membership, of which defendant has had notice."

The facts averred were sufficient to place on defendant the duty of payment. W. O. W. v. Burrell, 204 Ala. 210, 85 South. 762, 764; W. O. W. v. Adams, 204 Ala. 667, 86 South. 737. The change of beneficiary was averred to have been made by and with the consent of the defendant, which is binding on defendant as to its liability to the beneficiaries last named.

A preliminary question presented in the bill of exceptions by the following recitals was:

"The defendant called Judge McCord's attention to the fact that he was a member of Silver Leaf camp of the Woodmen of the World, a local camp of this defendant, and was interested in the funds and money of this defendant and for that reason he was disqualified, being a member of the defendant order, and the defendant thereupon objected to Judge McCord as the judge to preside and try this cause, and challenged him for his incompetency. Judge McCord * * * stated that he was a member of said Silver Leaf camp, Woodmen of the World, and held a beneficiary certificate from and issued by the defendant," and overruled defendant's "challenge and objection to his proceeding and trying this case, and said judge" did "preside during the trial thereof, * * * to which action of the court the defendant then and there duly and legally excepted."

[4] Disqualifications declared by our statute are:

"No judge of any court, chancellor, county commissioner, or justice, must sit in any cause or proceeding in which he is interested, or related to either party within the fourth degree of consanguinity or affinity, or in which he has been of counsel, or in which is called in question the validity of any judgment or judicial proceeding in which he was of counsel, or the validity or construction of any instrument or paper prepared or signed by him as counsel or attorney, without the consent of the parties entered of record, or put in writing, if the court is not of record." Code, § 4626.

Such disqualifications are not exclusive of those imposed by the common law. Pegues v. Baker, 110 Ala. 251, 17 South. 943; Medlin v. Taylor, 101 Ala. 239, 13 South. 310; Gill v. State, 61 Ala. 169; McKenzie v. Hixon, 201 Ala. 413, 78 South. 791.

Stating the rule of the common law to be that no judge ought to act where, "from interest, or from any other cause, he is supposed to be partial to one of the suitors," Judge Stone observed:

"According to the stern morality of the common law, a judge is required to be legally indifferent between the parties. Any, the

slightest pecuniary interest in the result, disqualifies. Relationship, usually within the fourth degree of the civil law, the law, in its severe but humane ethics, regards as a bias that unsettles the perfect equipoise that justice demands." Gill v. State, supra.

Later, this court declared of disqualifications of a judge that:

"The sole ground of incompetency disclosed by the return in this case is the membership of Judge Head in the plaintiff corporation, the Alabama State Bar Association, and his consequent interest in the suit resulting from the liability of that corporation for the costs of the proceedings should its determination be adverse to the association. This corporation is not a commercial or financial concern. * * * It is supported by fixed annual dues, exacted from its members, and these would neither be increased nor diminished by any possible result of this litigation. * * * The interest which will disqualify must be a pecuniary one, or one affecting the individual rights of the judge. The fact that dues which he pays to the association may have to be appropriated to the satisfaction of a judgment for costs cannot constitute such interest, since the dues are paid for that purpose, among others, whether in contemplation of such judgment or not, and the amount of his liability in that respect is not affected by the rendition of a judgment for costs against the association. Moreover, 'the liability of pecuniary gain or relief to the judge must occur upon the event of the suit, not result remotely, in the future, from the general operation of law upon the status fixed by the decision.' 12 Amer. & Eng. Encyc. of Law, pp. 45 et seq. The diminution of a member's distributive share in the corporate property depending upon a dissolution which may never occur, or never during his life or membership, or relief from such result, is certainly entirely too remote to be considered in any sense as occurring 'upon the event of the suit.' It is, on the contrary, if possible at all, a result of the remote future 'from the general operation of law on the status fixed by the decision.' That the interest relied on to disqualify must be a pecuniary one, and be affected by the event of the suit, and not remotely, is fully illustrated in the adjudged cases." Ex parte State Bar Ass'n, 92 Ala. 113, 117, 118, 8 South. 768, 769.

The adjudicated cases of this court declare that causes for disqualification of a judge are those affecting (1) his individual rights, (2) his pecuniary interest, (3) any interest the probable and natural tendency of which is to create bias in the mind of the judge for or against a party to the suit. And it is further declared by our cases that the disqualifying causes must be shown by the movant, who "must return the fact," and that, where the judge is shown to be incompetent, "mandamus is the proper remedy to compel him to certify his incompetency, as a preliminary to the selection of a qualified judge in his stead." McConnell v. Goodwin, Judge, 189 Ala. 390, 66 South. 675, Ann. Cas. 1917A, 839; Bryce v. Burke,

172 Ala. 219, 55 South. 635; State ex rel. Smith v. Pitts, 139 Ala. 152, 36 South. 20; Fulton v. Longshore, 156 Ala. 611, 46 South. 989, 19 L. R. A. (N. S.) 602; Ex parte Cornwell, 144 Ala. 497, 39 South. 354; Pegues v. Baker, 110 Ala. 251, 17 South. 943; Crook, Judge, v. Newborg, 124 Ala. 479, 27 South. 432, 82 Am. St. Rep. 190; McKenzie v. Hixon, 201 Ala. 413, 78 South. 791; Medlin v. Taylor, 101 Ala. 239, 13 South. 310; Ellis v. Smith, 42 Ala. 349; Webb v. Town of Eutaw, 9 Ala. App. 474, 63 South. 687.

The record shows that the alleged disqualification of Judge McCord was that set up by the movant; that he was—

"a member of said Silver Leaf camp, Woodmen of the World, and held a beneficiary certificate from and issued by the defendant."

Is a direct pecuniary or personal interest of that judge thus disclosed; or what direct interest, the probable and natural tendency of which was to create bias in the mind of that judge for or against a party to the suit, is disclosed by the instant motion and proof? In Ellis v. Smith, supra, a probate judge who received from a guardian, against whom a decree had been rendered in his court, Confederate treasury notes, and gave a receipt, as judge, for the same, in payment of the decree, held not incompetent, from interest, to preside on the trial of a motion made by said guardian to quash a fi. fa. afterwards issued upon such decree, and enter satisfaction of the same, on account of the Confederate treasury notes paid to, and receipted for by, said judge. It will be observed of this opinion that it was concurred in by Mr. Chief Justice Walker, and there was dissent by Mr. Justice Judge, and that it was rested on the authority of Peck et al. v. Freeholders of Essex, 20 N. J. Law, 457, where it was said:

"The interest, which will disqualify a judge, must be direct and immediate, and not remote and contingent, such as a mere liability to, or possibility of, future taxation. Any other construction would be harsh, constrained, and technical, and would, without any just reason, merely throw impediments in the way of suits, and unnecessarily embarrass the administration of justice."

This case was followed in Collins v. Hammock, 59 Ala. 448, where Mr. Justice Stone observed that—

"We do not think Judge Haralson's bias, if he had any, was such an interest, 'direct and immediate,' as to bring the case within our statute."

The case was cited with approval in Medlin v. Taylor, supra, where the probate judge had declined to take jurisdiction of a contest, instituted before him, of an election to the office of tax collector of that county. The petition for mandamus disclosed the grounds of Probate Judge Taylor's recusation to be that he and the contestee were

candidates at the general election, the former for the office of probate judge and the latter for the office of tax collector; that each was returned as elected to such respective offices, and that Taylor's election, at the time he refused to hear said contest, was being contested before the judge of the circuit court upon grounds similar to those specified in the statement of contest filed before said Taylor. The justice writing for this court makes the distinction between a pecuniary interest and a personal interest, as bias in favor of one of the parties to the cause, which disqualified him to hear and determine the same.

In Ex parte Cornwell, supra, the petitioner was indicted for embezzlement of bank funds while he was an officer of the bank. The trial judge was a depositor in said bank, which had failed, and was being liquidated by a receiver; and petitioner objected to being tried on the indictment by the respondent as judge. The cases of Gill v. State and Medlin v. Taylor, supra, were quoted from, with the observation that:

"* * * As a result of the alleged embezzlement for which the petitioner was indicted and to be tried, the bank wherein the judge was a depositor failed, and, unable to pay its depositors, was put into the hands of a receiver for the purpose of winding up its business. By the alleged malconduct of the petitioner, the judge is made to suffer a loss in property—money deposited with the bank—to what extent does not appear—whether the total of his deposit, or only a part—but that is immaterial. Under the facts, we think that the judge had such a personal interest in the subject-matter of the pending prosecutions, such as, in the nature of things, was calculated to produce in the mind a bias such as would impair * * * that equipoise which the stern morality of the common law demands in the administration of justice."

In Fulton v. Longshore, 156 Ala. 611, 46 South. 989, 19 L. R. A. (N. S.) 602, the Chief Justice discussed Ex parte Cornwell, supra, saying:

"Indeed, the disqualification might well have been placed distinctly upon the point of the pecuniary interest of the judge, since, under the statute, had the prosecution terminated in a conviction, a judgment in favor of the bank could well have been rendered against the petitioner for the sum shown to have been embezzled by him. Cr. Code 1896, § 5052."

The question of a disqualifying interest of a trial judge was raised in Bryce v. Burke, Probate Judge, supra, where it was declared that the interest which will disqualify a judge is that given statement in Ex parte State Bar Association, supra; and that, since it was the judge's duty under the statute to provide the ballots for elections, the ground of contest attacking the judge's judicial act rendered such judge incompetent to hear the contest.

Since the case is reversed for other reasons, we desire to say that if, as the holder of a beneficiary certificate or as a member of Silver Leaf camp, Woodmen of the World, Judge McCord has a direct and immediate interest in the general or special funds and properties of the defendant to be affected by the suit, or that he is or will be subject to assessments for the payment of beneficiary certificates such as he holds in defendant society, and that on which suit is sought to be maintained, he should not preside at another trial.

[5] Plaintiff moved the court for judgment against the defendant for failure to answer interrogatories propounded under the statute. Code, §§ 4049, 4055; Russell v. Bush, 196 Ala. 309, 71 South. 397. An inspection of the record shows no "threat" by the court of a judgment or otherwise that had the effect of compelling an admission from the defendant against its interest. On failure of full answer and on appropriate motion, the court was in duty bound to compel compliance with the statutory provisions as to answers to interrogatories propounded thereunder to a party to the suit; to exercise a sound judicial discretion to punish in one of the three ways provided by the statute. Russell v. Bush, supra, 196 Ala. 317, 71 South. 397. By the admission in question, the parties merely obviated the necessity of a resort to the statutory method for compelling full answer, and no reversible error intervened.

The pleas on which the ruling of the court rested are given general statement by appellant's counsel as follows: That the fraternal benefit society provides a fund by levying monthly and annual assessments upon its members, out of which is paid the amount shown by his beneficiary certificate on the death of a member in good standing; that there are many local camps of defendant's society, "but the Sovereign Camp makes the insurance agreement;" that the deceased (L. H. Alford) joined the order on April 24, 1895, was a locomotive engineer at the time, and continued in such occupation until the time of his death (April 7, 1919); that the constitution and laws of the order as they existed at the time Alford became a member, and as thereafter amended, entered into the contract of insurance; that "at the time Alford joined, there was no distinction between the rates fixed for the hazardous occupation of locomotive engineer and those engaged in preferred or nonhazardous occupations;" that thereafter the society "amended its constitution and reclassified its members, and those thereafter to be admitted into hazardous and nonhazardous risks, and fixed a higher rate of assessment for those members engaged in hazardous occupations, including locomotive engineers, of 30 cents per month in addition to their regular rate."

It was averred that Alford failed to pay

this hazardous rate, and under the laws of the order became automatically suspended, and, not having reinstated himself according to the constitution, "was not in good standing at his death, and the beneficiary certificate or policy sued on was null and void." The rate per month as necessary, due to be paid by said Alford, attempted to be set up in plea 3, was specified by the subsequent amendment to the constitution, and not the rate obtaining when Alford became a member and a long time thereafter. That is to say, appellant amended its constitution and by-laws by adding thereto the following:

"If a member engages in any of the occupations or businesses mentioned in this section, he shall within thirty days notify the clerk of his camp of such change of occupation, and while so engaged in such occupation shall pay on each assessment thirty cents for each one thousand dollars of his beneficiary certificate in addition to the regular rate. Any such member failing to notify the clerk and to make such payments as above provided shall stand suspended, and his beneficiary certificate be null and void."

[6-8] As applied to policies of insurance, it is elementary law that all terms and provisions thereof shall be construed most strongly against the insurers; that the by-laws of a mutual benefit society shall be construed more favorably to the insured, in view of its object to give insurance, and not unreasonably to deprive one of the same (Union Cent. Rel. Ass'n v. Johnson, 198 Ala. 488, 73 South. 816; W. O. W. v. Adams, 204 Ala. 667, 86 South. 737), and that one having authority may waive conditions in a policy intended for the benefit of the insurer (Mut. L. I. Co. v. Lovejoy, 201 Ala. 337, 78 South. 299, L. R. A. 1918D, 860; U. O. G. C. v. Hooser, 160 Ala. 334, 341, 342, 347, 49 South. 354). A fair interpretation of the foregoing amendment to the constitution and by-laws of defendant order is that it was only applicable to those members who changed their occupations after issue of the certificate, and in such event they were required to give notice within 30 days of the change of occupation to the clerk of the camp, and to pay the additional assessments provided. Any other construction of this amendment would do violence to its terms, not to say injustice to beneficiaries. It begins with the recital that—

"If a member engages in any of the occupations or businesses mentioned in this section * * * he shall * * * notify the clerk * * * of such change of occupation, and while so engaged in such occupation shall pay on each assessment. * * *"

And the provision for suspension is that—

"Any such member failing to notify the clerk and to make such payments as provided shall stand suspended, and his beneficiary certificate be null and void."

It could not be said that Alford and every other member of defendant's order, not having changed their occupations, were required under the amended constitution and by-laws to report the fact of their former or unchanged occupations to the clerk, etc. The first ground of demurrer to special pleas was well taken as follows:

"It fails to aver or allege that deceased was not a locomotive engineer at the time he became a member of defendant's society or at the time of the issuance of the certificate in the complaint mentioned."

It is urged that the policy was void for the reason that insured suffered from diabetes for many years, and died from the effects of that disease; that insured was automatically suspended by his failure to pay the regular rate of his assessment, and remained suspended for more than 10 days; that at and during the time he was suffering from diabetes; and that after 10 days, but within three months, "he attempted to reinstate himself by paying to the clerk of his camp his arrearages, for only his regular rate, when he made this payment, he did not notify the clerk of his camp, nor this defendant, that he was suffering with diabetes, nor did he deliver to the clerk of his camp a written statement that he was in good health, nor did he pay the arrearages for his hazardous occupation;" that the clerk treated him "as being reinstated, and continued to receive his regular rate, and did not discover that he was suffering from diabetes until after his death." Such were special defenses attempted to be set up by several pleas, to which demurrer was sustained, and the case was tried on count 6 and the general issue. W. O. W. v. Adams, 204 Ala. 667, 86 South. 737.

[9] In this jurisdiction it is held (generally) that only existing laws of the society or order are presumed to be known, and in reference to which it is presumed the contract evidenced by the beneficiary certificate was made. It is true that a corporation had not the power, by laws of its own enactment, to disturb or divest rights which it had created, or to impair the obligation of its contracts, or to change its responsibilities to its members, or to draw them into new and distinct relations; yet parties may contract with corporations in reference to laws of future enactment, and may agree to be bound and affected thereby as if such laws existed at the time of entering into the contractual relation, and may consent that such laws thereafter enacted may form a part of or modify or vary the contract. Sup. Commandery Knights of Golden Rule, etc., v. Ainsworth, 71 Ala. 436, 447-450, 46 Am. Rep. 332; Frat. Union of Amer. v. Zeigler, 145 Ala. 287, 39 South. 751, 46 L. R. A. (N. S.) 312, note; U. O. G. C. v. Hooser, supra; Slaughter v. Grand Lodge, 192 Ala. 301, 306, 68 South. 367; Ledy v. National

Council, etc., 129 Minn. 137, 151 N. W. 905, Ann. Cas. 1916E, 486; Klein v. K. & L. of S., 79 Wash. 173, 140 Pac. 72.

[10] In this jurisdiction, by Acts April 24, 1911, entitled "An Act for the Regulation and Control of Fraternal Benefit Societies," (section 20), it is provided that—·

"The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members, shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members." Gen. Acts 1911, pp. 700, 713.·

This provision, forbidding a waiver of certain provisions of the constitution and laws of such society by a subordinate body, officers, or members thereof, has application only from the date of the approval of the act.

While the member and the society may be said to have contracted or consented in the beneficiary certificate that the laws of the society existing at the time of the creation of the relation of membership and holder of such certificate might be changed by the society at any future date, and as so changed or modified might form a part of the contract, modifying and varying the terms of the contract, yet this provision was not a contract for a change of the organic law of the society by operation of law in such wise as that such legislative enactment should be given retroactive effect (as to waiver of a breach) under the general provisions contained in the certificate for a change of its constitution and by-laws. The contractual relation was entered into, and the law of the state then having application became a part thereof. So far as concerns the body or officials having the right or power to waive conditions in the policy of insurance made for the benefit of the society, if such there were, that contractual relation extended to such time as (by legislative enactment) the rights of the parties were limited, as is given expression in section 20, supra, as to subordinate bodies, officers or members of defendant. Thereafter, the members of the society were bound by the provisions against waiver (by those without authority), and not before such enactment.

By the eighth and like pleas defendant sought to set up certain sections of the constitution and laws of the society providing for payment to the clerk of his camp each month the assessment and dues required; that the penalty for failure was that a member should stand suspended, during which time his beneficiary certificate should be void; that a suspended member may be reinstated within 10 days from the date of suspension by payment of all arrearages and dues, if in good health and not addicted to the excessive use of intoxicants or narcotics; and after the expiration of 10 days, and within 3 months of the date of suspension, before reinstatement becomes effective, the suspended member must pay to the clerk of his camp all arrearages and dues, and deliver to him a written statement and warranty signed by himself, and witnessed, that he is in good health "and waiving all rights thereto if such written statement and warranty be untrue"; and that an attempted reinstatement without such member being in good health, etc., shall operate as a waiver of the condition of said provisions of the constitution and by-laws. Defendant alleges in his pleas that plaintiff was suspended for nonpayment of assessment and dues for the month of March, 1914 (on April 1st), and that on, to wit, "the 18th day of April, 1914, said Alford after having been suspended for more than 10 days paid to the clerk of his camp the regular assessment, but failed to deliver to him a written statement and warranty signed by himself, and witnessed, that he was in good health, wherefore he was never reinstated, his beneficiary certificate is null and void, and defendant is not indebted to the plaintiff."

[11] Such provisions in defendant's constitution and by-laws were construed in W. O. W. v. Adams, 204 Ala. 667, 86 South. 737. It was observed of section 115 of said constitution and laws that the conditions on which payment of arrearages may be made as affecting reinstatement are different accordingly as payment or reinstatement was not made within 10 days from the date of suspension, if in good health and not addicted to the excessive use of intoxicants or narcotics. If such payment is sought to be made after the expiration of 10 days, and within 3 months of the date of suspension, to effectuate a reinstatement such payment to the clerk of his camp of all arrearages and dues must be accompanied by "a written statement and warranty signed by himself (insured), and witnessed, that he is in good health and not addicted to the excessive use of intoxicants or narcotics." That is to say, the payment by insured of all arrearages to the clerk of his camp within 10 days of the date of his suspension has the prima facie effect of reinstatement, subject to be defeated by the plea and evidence on defendant's part that at the time of payment within 10 days of suspension the assured was not in good health, and was addicted to the excessive use of intoxicants or narcotics. If reinstatement was sought within 10 days of suspension, it was not made a condition precedent that such evidence of assured's good health and freedom from the excessive use of intoxicants or narcotics should be given by assured, that being defensive matter available to the insurer. It is only when reinstatement is sought thereafter, and within 3 months, that the payment of arrearages must be accompanied by the written statement of good health, and no addiction to·

the excessive use of intoxicants or narcotics. It would appear from the foregoing that special pleas 8, 9, and 11 were free from demurrer directed thereto, and reversible error intervened.

[12] It may be well that we say of questions directed to the witness H. A. Cook and answers thereto:

"Q. Was Mr. Alford in good standing at the time he died? A. Yes, sir.

"Q. So was he, or was he not, in good standing at the time of his death? A. I would term it that he was"

—that the same were an affirmance of the issue being tried or a material part thereof, in such wise as that witness should not have been permitted so to answer. These answers were of the inference to be drawn by the jury from all the evidence submitted under the issues made by the pleading, and were not permissible under the rules of law obtaining in this jurisdiction. Standard Cooperage Co. v. Dearman, 204 Ala. 553, 86 South. 537; Miller v. Whittington, 202 Ala. 406, 80 South. 499. They did not come within the exception of expert testimony. Connors-Weyman Steel Co. v. Harless, 202 Ala. 317, 80 South. 399; Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 South. 398; Harbison-Walker Ref. Co. v. Scott, 185 Ala. 641, 64 South. 547; Stewart v. S. S. S. & I. Co., 170 Ala. 544, 54 South. 48, Ann. Cas. 1912D, 815; Pope v. State, 174 Ala. 63, 57 South. 245.

[13] There was no error in asking the witness if he was "the only man in Montgomery representing that camp, the Sovereign Camp?" to which he answered "Yes, sir." It called for the fact of agency at Montgomery, Ala.: not for the extent or scope of the agent's authority. Roberts & Sons v. Williams, 198 Ala. 290, 292, 73 South. 502.

We are of opinion that the cause should be retried upon the issues as we have indicated.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, GARDNER, and BROWN, JJ., concur.

On Rehearing.

THOMAS, J. [14] Count 6 is not so broad as that dealt with in Sovereign Camp, W. O. W. v. Eastis, 89 South. 63,¹ and was not sufficient to present the issues sought to be especially pleaded, and to which pleas demurrer was sustained.

Application for rehearing overruled.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, and GARDNER, JJ., concur.

MILLER, J., not sitting.